No. 99,280

STATE OF KANSAS, *Appellee*, v. DAVID L. WOODWARD, *Appellant*.

(202 P.3d 15)

Opinion filed March 6, 2009.

*Matthew M. Dwyer*, of Maughan & Maughan LC, of Wichita, argued the cause, and *Carl F.A. Maughan*, of the same firm, and *David L. Woodward*, appellant pro se, were with him on the briefs for appellant.

*Julie A. Koon*, assistant district attorney, argued the cause, and *Nola Tedesco Foulston*, district attorney, and *Stephen N. Six*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

JOHNSON, J.: In 1991, David L. Woodward pled guilty to kidnapping, two counts of sexual exploitation of a child, rape, indecent liberties with a minor, and felony murder in connection with the killing of a 5-year-old child and the sexual molestation of an 8-year-old child. In his direct appeal, we affirmed his sentence. *State v. Woodward*, No. 68,957, unpublished opinion filed January 21, 1994. The summary denial of Woodward's 1995 motion pursuant to K.S.A. 60-1507 was affirmed by the Court of Appeals and review was denied by this court. *Woodward v. State*, No. 77,762, unpublished opinion filed January 8, 1999, *rev. denied* 266 Kan. 1117 (1999). Woodward returns to the appellate courts once more, appealing the summary denial of his 2007 motion to vacate his guilty pleas and dismiss the indictment based on newly discovered evidence. We affirm.

We are favored with two briefs of appellant: one filed by Woodward's counsel and one filed by Woodward. Counsel's brief states as its first issue the general, overarching question of whether the district court erred in denying Woodward's motion to vacate his guilty pleas and dismiss the indictment. As a purported second issue, counsel states that "[w]eight should be given to Defendant's supplemental brief and argument therein."

On the first issue, counsel devotes a portion of his argument to urging us to abandon the abuse of discretion standard of review on plea withdrawals in favor of a de novo review where the defendant alleges that the State's breach of a plea agreement denied him or her due process. On the merits, counsel argues that the prosecutor did not make a good-faith presentation of the plea agreement's sentence recommendation, thereby influencing the sentencing judge to refuse the recommendation and deprive Woodward of the benefit of his bargain. On the second issue, counsel's one-sentence argument asks that the issues raised in Woodward's supplemental brief "be granted review and given their due weight and consideration."

Likewise, Woodward's pro se brief raises the issue of the "prosecutor's reneging of plea agreement." Additionally, Woodward asserts that the prosecutor violated K.S.A. 22-2910 and that this issue is based upon newly discovered evidence because he just learned

of that statute's existence. We will attempt to simplify the analysis of the appellant's complaints.

## BREACH OF PLEA AGREEMENT

As part of the plea agreement, the State agreed to recommend that the district court impose a consecutive sentence of 10 years to life on all of the counts other than felony murder, *i.e.*, a controlling sentence of life, plus 10 years to life. The sentencing court ultimately imposed a "controlling sentence of life, plus an additional 30 years to life." Woodward attributes the court's rejection of the recommended sentence to the manner in which the prosecutor presented the bargained plea agreement recommendation at the sentencing hearing.

### Standard of Review

Procedurally, Woodward's allegation that the State breached the plea agreement was presented in a motion to withdraw his plea. To correct manifest injustice after sentence has been imposed, a court may set aside the judgment of conviction and permit the defendant to withdraw his or her plea. K.S.A. 22-3210(d). We have repeatedly said that the denial of a post-sentencing motion to withdraw a plea lies within the trial court's discretion and an appellate court should not disturb that ruling absent an abuse of discretion. See, *e.g.*, *State v. Shopteese*, 283 Kan. 331, 340, 153 P.3d 1208 (2007). The appellant carries the burden of establishing an abuse of discretion. *State v. Harned*, 281 Kan. 1023, 1042, 135 P.3d 1169 (2006).

However, we have stated:

"Judicial discretion will vary depending upon the character of the question presented for determination. Generally, the trial court's decision is protected if reasonable persons could differ upon the propriety of the decision as long as the discretionary decision is made within and takes into account the applicable legal standards. However, an abuse of discretion may be found if the trial court's decision goes outside the framework of or fails to properly consider statutory limitations or legal standards." *Shopteese*, 283 Kan. at 340.

Here, the underlying complaint is that the State breached the plea agreement, which presents a question of law, subject to unlimited review. See *State v. Marshall*, 21 Kan. App. 2d 332, 336,

899 P.2d 1068, *rev. denied* 258 Kan. 861 (1995) (noting the standard of review for evaluating an alleged breach of plea agreement is de novo). Thus, our review of whether the State breached the plea agreement is unlimited, but the question of whether the district court should have permitted a plea withdrawal for the breach, if one occurred, is reviewed for an abuse of discretion.

### Analysis

An expectation inherent in all plea agreements is that each party will honor the terms of the agreement. *State v. Boley*, 279 Kan. 989, 992, 113 P.3d 248 (2005). Our case law regarding plea agreement breaches is rooted in *Santobello v. New York*, 404 U.S. 257, 262, 30 L. Ed. 2d 427, 92 S. Ct. 495 (1971). In *Santobello*, the United States Supreme Court held that a plea agreement is a promise that must be fulfilled by both parties. 404 U.S. at 262. If the State fails to uphold its end of the bargain, then the court must decide whether justice requires that the. promise be fulfilled or whether the defendant should have the chance to withdraw the plea. 404 U.S. at 262.

The State can breach a plea agreement by effectively arguing against the negotiated sentencing recommendation. See *United States v. Grandinetti*, 564 F.2d 723, 725 (5th Cir. 1977) (prosecutor told judge he had "serious problems" with agreed recommendation to run sentences concurrently). However, if the State actually makes the sentence recommendation that it promised, the prosecutor's further comments in support of the recommended sentence do not breach the plea agreement so long as the comments do not effectively undermine the recommendation. See *State v. Crawford*, 246 Kan, 231, 237, 787 P.2d 1180 (1990); see also *United States v. Benchimol*, 471 U.S. 453, 455-56, 85 L. Ed. 2d 462, 105 S. Ct. 2103 (1985) (prosecutor not required to be enthusiastic about the plea agreement terms or to give reasons for the recommendation).

Woodward concedes that the prosecutor asked the sentencing court to follow the plea agreement. The transcript reflects that the prosecutor outlined the specific recommended sentence for each of the five counts, other than felony murder, and asked that they "run concurrent with each other." The prosecutor then requested

the mandated life sentence on the felony-murder charge and asked the court to "run that consecutive to the controlling 10 to life on the other counts." In concluding her remarks, the prosecutor reiterated: "I would ask the Court to impose the sentence that the parties have agreed to," which was the controlling sentence of life plus 10 years to life.

Woodward complains that the prosecutor "constructively reneged on the plea" by coupling her requests for the recommended sentence with "arguments as to why such a sentence should not be given." He contends that the prosecutor's "arguments could only serve to anger the judge, prejudice the sentence recommendation, and inflame the passions and sentiments against the defendant, inevitably resulting in a much harsher and more punitive sentence." Considering the context of the entire sentencing hearing, we disagree with Woodward's characterization of the prosecutor's remarks.

The hearing commenced with the defense counsel speaking on behalf of her client. Counsel pointed out that Woodward had been a law enforcement officer for approximately 20 of his 48 years of life; that he had "led an exemplary life until around the time of [the child's] death"; that he had been married for approximately 20 years and had two children; that he had the support of his family; and that the evaluation from Larned State Hospital diagnosing Woodward as a pedophile was flawed. Counsel indicated that the victims' families had been consulted about the sentence recommendation and had agreed to it. Although defense counsel asked the court to follow the plea agreement, she also asked that the court make provisions for her client to "get the treatment that is so deeply needed."

Defense counsel's remarks were followed by those of Woodward's wife, who said:

"I just more or less want to reiterate what she [defense counsel] said. I have been married to David for 22 years. He's a good man. He's been a good father. . . . He did not murder [the child]. It was an accident. He can't erase the seriousness of what he's done and everything; but he needs help, not to be punished and put away for the rest of his life. He needs help. And I was assured he

would get help; and he does have the full support of his whole family, his sons, and myself."

After Woodward declined the opportunity to address the court directly, the court asked the State for its recommendation. The prosecutor commenced by clarifying that the sentencing recommendation was that of the district attorney's office, not that of the victims. The prosecutor then reminded the judge, who had also presided at trial, of the heinous nature of the offenses and the losses suffered by the victims' families. She referenced the diagnosis of pedophilia and opined that "the help that can be best afforded to Mr. Woodward is to make him not dangerous to the community and not dangerous to himself by incarcerating him." The prosecutor pointed to facts that called into question the defense statements that Woodward was a "good father." She described circumstances that refuted the assertion that the killing was accidental, such as Woodward's failing to call for emergency help, throwing the child's body in a ditch, and hiding the homicide for 5 years. She argued that Woodward's having been a law enforcement officer actually made the circumstances more egregious because of the trust that position should engender.

In essence, the prosecutor's arguments appear to have been directly tailored to address the defense's attempt to cast Woodward in a favorable light. The plea-bargained recommended sentence was not the minimum which the court could impose. If the sentencing court had found the defense's proffered mitigation to be compelling, it was not precluded from doing something *less* than recommended, such as running all of the convictions concurrently. See *State v. Hill,* 247 Kan. 377, 385, 799 P.2d 997 (1990) (plea bargain terms not binding on trial court). In that context, the State was free to argue why the recommended sentence was also the most appropriate sentence to impose under the circumstances. The plea agreement did not require the prosecutor to ignore the defense's attempts to minimize Woodward's culpability.

Accordingly, we find that the prosecutor made an unequivocal recommendation that the sentencing court impose a sentence of life plus 10 years to life, as provided in the plea agreement. Nothing

the prosecutor said at the sentencing hearing was intended to undermine the State's recommendation or to suggest that the sentencing court impose a harsher sentence. The State did not breach the plea agreement, so there was no manifest injustice to correct. Accordingly, we need not consider whether the district court's denial of the plea withdrawal motion was an abuse of discretion. The district court did not err in summarily denying Woodward's motion to withdraw his plea.

*K.S.A. 22-2910*

In his pro se brief, Woodward attempts to fashion an argument, challenging the prosecutor's use of the incriminating statements Woodward made to a detective. Woodward claims the statements were elicited by the detective's proposal of "a diversion of psychiatric care (mental health placement) in lieu of prosecution and prison if [Woodward] would provide information without an attorney."

Apparently, at some point relatively recently, Woodward discovered K.S.A. 22-2910, which in 1991 read:

"No defendant shall be required to enter any plea to a criminal charge as a condition for diversion. No statements made by the defendant or counsel in any diversion conference or in any other discussion of a proposed diversion agreement shall be admissible as evidence in criminal proceedings on crimes charged or facts alleged in the complaint."

Woodward argues that it was manifest injustice for the State, in violation of K.S.A. 22-2910, to use information he "provided under the promise of a proposed diversion" to bring charges against him and to provide the factual basis for his subsequent guilty pleas. He further argues that he was "greatly prejudiced through the misconduct of both the police, by their obtaining incriminating information through a promise of a proposed diversion, and by the prosecutor through her use of this information to both charge and convict [him] of alleged criminal activity." Because of this manifest injustice, Woodward asserts that the district court erroneously denied his motion to withdraw his guilty pleas and that his indictment should be dismissed. However, he appears to clarify that he is not raising an issue as to whether his confession was coerced.

While perhaps creative for a nonlawyer, Woodward's arguments fail for a multitude of reasons. First, Woodward should have raised the issue in either his direct appeal or his 60-1507 motion. See *State v. Flores*, 283 Kan. 380, 384, 153 P.3d 506 (2007) (stating that where a defendant's claim has not been raised at trial or on direct appeal, such a default prevents the defendant from raising the claim in a second appeal or a collateral proceeding). His assertion that his recent discovery of a statutory provision constitutes "newly discovered evidence" is unavailing. The maxim that ignorance of the law is no excuse is well established, longstanding, and widely known. See *In re K.M.H.*, 285 Kan. 53, 75, 169 P.3d 1025 (2007); *State ex rel. Murray v. Palmgren*, 231 Kan. 524, 536, 646 P.2d 1091 (1982); *State v. Anderson*, 40 Kan. App. 2d 69, 71, 188 P.3d 38 (2008) ("The legislature and the public are well aware of this rule; Kansas law has applied it since 1882, at least.").

Moreover, Woodward must contend with the waivers which accompanied his guilty pleas. "[W]hen an accused enters a voluntary plea of guilty, he is deemed to have waived any irregularities which may have occurred in the proceedings prior thereto." *Jones v. State*, 207 Kan. 622, 625, 485 P.2d 1349 (1971); see *Trotter v. State*, 218 Kan. 266, 270, 543 P.2d 1023 (1975); *State v. Melton*, 207 Kan. 700, 713, 486 P.2d 1361 (1971) (holding that a party is considered to have waived procedural irregularities upon entering a voluntary guilty plea "even though the defects may reach constitutional dimensions").

Finally, a review of the statutory scheme for diversions reveals that Woodward's reliance on K.S.A. 22-2910 is misplaced. A diversion agreement may be proposed only "[a]fter a complaint has been filed charging a defendant with commission of a crime . . . if it appears to the district attorney that diversion of the defendant would be in the interests of justice and of benefit to the defendant and the community." K.S.A. 22-2907(1). Woodward's claim that the prosecutor used his statements to bring charges against him runs counter to the requirement that the complaint must have been filed *before* the diversion is proposed. Moreover, the detective had no authority to propose a diversion, either before or after the filing of the complaint; that authority rests solely

with the prosecutor. Most importantly, however, diversion agreements are expressly prohibited for defendants charged with a class A or B felony. K.S.A. 22-2908(2)(b) (Ensley 1988). Woodward was charged with both. See K.S.A. 1991 Supp. 21-3401 (felony murder is a class A felony); K.S.A. 21-3420 (Ensley 1988) (kidnapping is a class B felony).

We find no merit in Woodward's arguments that the use of his confession to commence criminal proceedings against him and to provide the factual basis for his guilty pleas violated the provisions of K.S.A. 22-2910. He has failed to establish manifest injustice, and the district court's denials of his motion to withdraw his plea and his motion to dismiss the indictment were not erroneous.

Affirmed.