NOT DESIGNATED FOR PUBLICATION

No. 121,466

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CLINT E. WOODS,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; KEVIN M. SMITH, judge. Opinion filed July 24, 2020. Affirmed.

*Joshua S. Andrews*, of Cami R. Baker & Associates, P.A., of Augusta, for appellant.

*Clint E. Woods*, appellant pro se.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before WARNER, P.J., MALONE and BRUNS, JJ.

PER CURIAM: Clint E. Woods appeals the district court's summary denial of his third K.S.A. 60-1507 motion as untimely and successive. Finding no error, we affirm the district court's judgment.

1

FACTUAL AND PROCEDURAL BACKGROUND

In 2003, the State charged Woods with two counts of first-degree murder and one count of aggravated battery stemming from a gang fight in which two people were killed and a third was injured. *State v. Woods*, No. 93,417, 2006 WL 851245, *1 (Kan. App. 2006) (unpublished opinion) (*Woods I*). Woods was represented by attorneys Steven Mank and Kurt Kerns and, in accordance with a plea agreement, Woods pled guilty to one count of second-degree murder. 2006 WL 851245, at *1. At the plea hearing, Woods understood that both parties would be recommending a sentence of 258 months, but the district court was not bound by the recommendation and could sentence him to between 147 and 653 months' imprisonment. 2006 WL 851245, at *1. Woods provided a factual basis for his guilty plea. 2006 WL 851245, at *1.

Before his sentencing, Woods moved to withdraw his plea, arguing actual innocence and asserting that his attorneys had not told him about the consequences of his plea and had improperly induced him to plead guilty. 2006 WL 851245, at *1. The district court appointed Michael Brown to represent Woods and held an evidentiary hearing on his motion. 2006 WL 851245, at *1.

At the evidentiary hearing, Woods testified that his attorneys led him to believe that an oral agreement had been reached whereby the State had agreed to recommend a reduced sentence of 60 months in exchange for Woods cooperating with the law enforcement in its investigation of the gang fight. 2006 WL 851245, at *2. Woods also testified that Kerns coerced him into entering his plea by telling him that the judge who was scheduled to preside over his trial would not give him a fair trial. 2006 WL 851245, at *2. Finally, Woods testified that Kaylen Irby, a witness who had implicated him in the shooting, recanted that story on the day Woods pled guilty. 2006 WL 851245, at *2.

Mank testified that he and the prosecutor had orally agreed that if Woods cooperated with police, the State would consider allowing a motion for departure sentence. 2006 WL 851245, at *2. But Mank also testified that there was no agreement on a specific departure sentence and that he never told Woods he might receive a 60-month sentence. 2006 WL 851245, at *2. According to Mank, Woods wanted a 60-month sentence, but Mank "told Woods there was no way he was going to get a 60-month sentence since two people had been killed." 2006 WL 851245, at *2. Kerns testified that he knew some witnesses had recanted, but he was concerned that their testimony might continue to change. 2006 WL 851245, at *2.

The district court denied Woods' motion to withdraw his plea and sentenced him to 258 months' imprisonment. 2006 WL 851245, at *1. Woods appealed and this court affirmed. 2006 WL 851245, at *2-3. The Kansas Supreme Court denied Woods' petition for review, and the mandate was issued on September 21, 2006.

*The first K.S.A. 60-1507 motion*

On September 18, 2007, Woods filed a timely pro se K.S.A. 60-1507 motion, arguing that Mank and Kerns had provided unconstitutionally ineffective assistance of counsel through their failure "'to adequately investigate the facts and circumstances' of his case." *Woods v. State*, No. 105,948, 2012 WL 6734507, at *2 (Kan. App. 2012) (unpublished opinion) (*Woods II*). He contended that Mank and Kerns provided ineffective assistance of counsel when they failed to locate or interview Irby or Rawshanda Solomon—whom he asserted would have established his alibi—and they failed to tell him before he entered his plea that Irby had recanted his statements incriminating Woods. 2012 WL 6734507, at *2. Woods asserted he had not made this argument during his plea withdrawal motion "because 'the factual and legal significance' of these issues were unknown to him at that time.'" 2012 WL 6734507, at *2.

3

On May 21, 2009, the district court held an evidentiary hearing on Woods' motion, at which Kerns and Mank testified that they did not remember whether they had investigated Irby. 2012 WL 6734507, at *3. Woods testified that a few days before his scheduled trial date, Mank and Kerns told him that Irby's anticipated trial testimony would likely lead to a jury convicting Woods, but Woods learned from his mother just before sentencing that Irby wanted to recant his statements. 2012 WL 6734507, at *3. Woods claimed he would not have pled guilty had he known that Irby wished to recant. 2012 WL 6734507, at *3. Irby testified that he had gone to Kerns' law office and explained to two people there that he actually had no knowledge of what happened during the gang fight. 2012 WL 6734507, at *4.

The district court denied Woods' motion, finding that Irby's recantation "'would not produce a great amount of evidence [and] does not rise to the level of alibi as was alleged in the 60-1507 motion.'" 2012 WL 6734507, at *4. The district court also found that Mank and Kerns were not ineffective and Woods was not prejudiced by their behavior:  "'Mr. Woods received the benefit of a plea agreement which called for a substantially less [*sic*] sentence than he would have received had he gone to trial and been convicted.'" 2012 WL 6734507, at *4.

Woods appealed, arguing that he had sufficiently demonstrated in the district court that manifest injustice would result unless the district court set aside the conviction and allowed him to withdraw his guilty plea. 2012 WL 6734507, at *4. Noting that Woods did not present any evidence about Solomon in the district court or refer to Solomon on appeal, this court held that Woods had waived any argument related to Solomon. 2012 WL 6734507, at *5. It also declined to consider issues Woods raised for the first time on appeal about a failure to interview additional individuals. 2012 WL 6734507, at *6.

Next, this court held that Woods' claims were barred by the doctrine of res judicata because his K.S.A. 60-1507 motion raised "the exact same issue" that the district court

4

resolved on its merits while deciding Woods' presentencing motion to withdraw his plea. 2012 WL 6734507, at *6. This court "conclude[d] that Woods has had his day in court [on the recantation issue] and the doctrine of res judicata obviates the need to reconsider the issues Woods raises once again." 2012 WL 6734507, at *7. The Kansas Supreme Court denied Woods' petition for review, and the mandate issued on August 27, 2013.

*The second K.S.A. 60-1507 motion*

In May 2014, Woods filed a second K.S.A. 60-1507 motion, again arguing that his trial counsel provided ineffective representation by failing to investigate Solomon's and Irby's changing statements and by misrepresenting the terms of the plea agreement. *Woods v. State*, 52 Kan. App. 2d 958, 961, 379 P.3d 1134 (2016) (*Woods III*). Woods also argued that Brown—his counsel at the hearing on his motion to withdraw his plea— was ineffective because he failed to call Manuel Roach to testify despite knowing that Roach would also recant his statements implicating Woods. 52 Kan. App. 2d at 959, 962. Woods submitted signed statements from supporting witnesses which he characterized as newly discovered evidence, and he argued that he had a colorable claim of actual innocence, so the district court had to consider his arguments on their merits in order to avoid manifest injustice. 52 Kan. App. 2d at 962.

The State responded that Woods was attempting to relitigate issues already decided against him, that there was no "newly discovered evidence," and that Woods had failed to establish a reason to consider his untimely and successive K.S.A. 60-1507 motion. 52 Kan. App. 2d at 962. The district court summarily denied the motion, holding that Woods had made "'no showing of manifest injustice'" and that his claims were barred by res judicata. 52 Kan. App. 2d at 962.

On appeal, this court agreed with the State that res judicata barred Woods' claims to the extent that they were based on "his attorney's failure to fully investigate witnesses

5

and their changing stories" or were based on "his attorney's representation about the length of his sentence." 52 Kan. App. 2d at 965. In addition, this court found that Woods had waived and abandoned in his first K.S.A. 60-1507 proceeding any claims based on a failure to investigate Solomon's changing stories and "a defendant cannot revive an abandoned point in a subsequent proceeding." 52 Kan. App. 2d at 966.

This court also addressed the impact of Woods' claim of actual innocence and noted that Kansas courts presume that "'[a] plea of guilty is admission of the truth of the charge and every material fact alleged therein." See 52 Kan. App. 2d at 966-67. And "[w]here judgment and sentence have been entered upon a plea of guilty, there can be no review of the sufficiency of the evidence in a K.S.A. 60-1507 proceeding." 52 Kan. App. 2d at 967. This court concluded:

> "Woods' overarching claim on appeal is that his allegations in the current K.S.A. 60-1507, if true, establish his actual innocence. A claim of actual innocence, he argues, provides the gateway to overcome the procedural bars of timeliness and successiveness by establishing the manifest injustice and exceptional circumstances required to pursue his claim and receive an evidentiary hearing. Clearly a colorable claim of innocence can be the basis to find manifest injustice. That said, we do not need to reach Woods' assertion that a colorable claim of innocence may also be the basis for a finding of exceptional circumstances, because even if we did find that a colorable claim of innocence opens both gateways, it is still insufficient to override the longstanding rule that a freely and voluntarily entered guilty plea bars a collateral attack on the sufficiency of the evidence. Accordingly, we find that the district court did not err in summarily denying Woods' untimely and successive K.S.A. 60-1507 motion. [Citation omitted.]" 52 Kan. App. 2d at 967-68.

Woods filed a petition for review, which the Kansas Supreme Court denied. The mandate was issued on October 11, 2017.

*The third K.S.A. 60-1507 motion*

On December 6, 2017, Woods filed a third pro se K.S.A. 60-1507 motion, once again seeking to set aside his guilty plea. This time, he argued (1) Mank, Kerns, and Brown provided ineffective assistance of counsel; (2) the district court judge, the prosecutor, Mank, and Kerns conspired to deny Woods fair proceedings; (3) the State erred by initially charging him with first-degree murder and by arguing false facts at the sentencing hearing; (4) there was insufficient evidence to support a conviction for intentional second-degree murder; and (5) the district court erred when it failed to rule on a motion in the proceedings on his second K.S.A. 60-1507 motion.

More specifically, Woods again argued that Mank and Kerns provided ineffective assistance of counsel by misrepresenting the impact of his guilty plea. He also raised a new claim that Mank and Kerns were ineffective because they failed to obtain relevant impeachment evidence about Detective Robert Chisholm and Officer James Espinoza. Under *Giglio v. United States*, 405 U.S. 150, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972), and *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), the State must "disclose evidence favorable to the defense, even after conviction, if the State knew of that evidence during trial." See *State v. Robinson*, 309 Kan. 159, 160, 432 P.3d 75 (2019). Woods asserted that the impeachment evidence about Chisholm and Espinoza would have forced the State to dismiss the charges against him.

Woods also argued that both Mank and Brown misinformed him that his criminal history score was C and he would receive a 194-month sentence. And he asserted that Brown was ineffective for not arguing this point at the presentencing hearing on the motion to withdraw his plea and for failing to adequately advocate for a downward departure sentence. According to Woods, the State and the district judge who accepted his plea "set [him] up" by appointing Brown to represent him. Woods alleged that the same district judge improperly presided over his plea hearing.

7

Woods also asserted that the State argued "false evidence" during his sentencing hearing and that the facts supported only a manslaughter conviction, not a conviction for second-degree murder. Relatedly, Woods argued that the State erred by initially charging him with first-degree murder when the facts, in his opinion, only supported a charge of involuntary manslaughter. He also alleged that the district judge did not specifically find him guilty of second-degree *intentional* murder, so his conviction must be changed to second-degree *unintentional* murder. Finally, Woods asserted that he had filed a motion for continuance of the hearing on his second K.S.A. 60-1507 motion in those proceedings but due to the mail system, the district court did not receive it in time. Because the district court "suppressed and never answered" that motion for continuance, Woods sought in his third K.S.A. 60-1507 motion to "resubmit" it, asking the court "to review, apply law, [and] properly answer this motion either within this 60-1507 or separately."

On January 9, 2019, Woods filed a motion seeking to amend his third K.S.A. 60-1507 motion to add claims of a defective complaint and lack of jurisdiction. He argued that his conviction should be reversed and vacated because the complaint filed in 2003 was fatally defective since the State charged him with two counts of first-degree premeditated murder and one count of aggravated battery, but the State knew at the time that the evidence did not support those murder charges.

On January 18, 2019, the district court held a status hearing, found that the issues in Woods' motion had been addressed in prior actions, and ordered the parties to submit proposed findings of facts and conclusions of law. On May 22, 2019, the district court filed its journal entry of judgment, finding: "All claims by movant in this motion and his motion to alter and amend either have been or could have been raised in his prior motions, and are therefore barred from subsequent litigation." Thus, the district court denied Woods' third K.S.A. 60-1507 motion as well as the motion to alter and amend as being untimely and successive. Woods timely appealed.

Woods argues that the district court's denial of his third K.S.A. 60-1507 motion resulted in manifest injustice because it was based on the "newly discovered" *Giglio* and *Brady* evidence, and because he alleged actual innocence. He also contends that the exceptional circumstance of "a colorable claim of actual innocence based on the failure of the State of Kansas to disclose *Giglio* and *Brady* information on the investigating law enforcement officers" justifies consideration of his third K.S.A. 60-1507 motion despite it being successive. The State disagrees, arguing that the district court properly denied the motion as successive and untimely because Woods failed to show that manifest injustice or exceptional circumstances required the court to consider the motion on its merits.

"When a district court summarily denies a K.S.A. 60-1507 motion, appellate review of that ruling is de novo. The interpretation of statutes and Supreme Court rules involves questions of law reviewable de novo." *Littlejohn v. State*, 310 Kan. 439, 443, 447 P.3d 375 (2019).

Woods does not dispute the district court's finding that this K.S.A. 60-1507 motion is untimely or successive, and clearly it is. This is Woods' third K.S.A. 60-1507 motion and was filed more than 11 years after the termination of appellate jurisdiction over Woods' direct appeal. See K.S.A. 2019 Supp. 60-1507(c) ("The sentencing court shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner."); K.S.A. 2019 Supp. 60-1507(f) (stating that 60-1507 motions must be brought within one year of the termination of state appellate jurisdiction). Because Woods' current motion is untimely, "he must establish manifest injustice" in order to obtain consideration of its merits and because it is successive, "he must establish exceptional circumstances." See *Thuko v. State*, 310 Kan. 74, 80-81, 444 P.3d 927 (2019).

*Did Woods establish a manifest injustice would result from a failure to consider his untimely K.S.A. 60-1507 motion?*

"For purposes of finding manifest injustice under this section, the court's inquiry shall be limited to determining why the prisoner failed to file the motion within the one-year time limitation or whether the prisoner makes a colorable claim of actual innocence." K.S.A. 2019 Supp. 60-1507(f)(2)(A). The movant bears the burden to prove manifest injustice by a preponderance of the evidence. Supreme Court Rule 183(g) (2020 Kan. S. Ct. R. 223).

### *Reasons for untimely filing*

Woods' appellate argument explaining the timing of the claims in this K.S.A. 60-1507 motion focuses only on the alleged impeachment evidence about Espinoza and Chisholm to which he argues he was entitled under *Giglio* and *Brady*. Although Woods generally alleged in his motion the existence of impeachment evidence about other witnesses, he does not renew that allegation on appeal, so it is waived and abandoned. See *State v. Roberts*, 310 Kan. 5, 13, 444 P.3d 982 (2019) ("[A]n issue not briefed is deemed waived and abandoned.").

In the district court, Woods stated that he "had very limited knowledge until recently what *Brady/Giglio* issues was [*sic*] [and] meant" and that he had "just recently" received "information" that indicated Chisholm and Espinoza "potentially [had] themselves *Brady/Giglio* issues that would [have] prevented them from having any involvement in [Woods']s case." Somewhat more specifically, he asserted that Chisholm and Espinoza had "been exposed recently as corrupt officers whom [*sic*] potentially have *Brady/Giglio* issues that have been intentionally suppressed [and] buried [and] not exposed to defendant[] or [the] public."

10

Woods attached to his motion what appears to be a copy of a screenshot from a cell phone showing Chisholm's and Espinoza's inclusion on a list of unknown origin entitled, "The top ten most corrupt officer in t [*sic*]." The text of the screenshot alleges that Chisholm "engages in illegal interrogation tactics," such as knowingly interrogating a witness who was under the influence of drugs. The screenshot alleges that Espinoza was accused of being "responsible for overlooking" many crimes committed by a police unit and intimidating those who might complain about police misconduct. Woods asked the court to "order the prosecution to fully disclose to [Woods] any [and] all information covered by *Brady/Giglio*."

On appeal, Woods reiterates that he did not know about the impeachment evidence related to Chisholm and Espinoza within the one-year time limitation for a K.S.A. 60-1507 motion; "he could not have discovered" that evidence unless the State disclosed it; and had he known about the evidence prior to pleading guilty, "he would have insisted his counsel seek dismissal of his charges." He contends that the denial of his current K.S.A. 60-1507 motion resulted in a manifest injustice because the district court did not consider this "newly discovered evidence"—the impeachment evidence he contends he was entitled to under *Giglio* and *Brady*.

Woods' arguments lack merit for two reasons. First, other than attaching a screenshot to his motion with vague allegations about Chisolm and Espinoza from an unknown source, Woods failed to allege in his motion with any specificity what "impeachment evidence" the State failed to disclose about Chisholm and Espinoza that would have led to dismissal of the charges against him.

Second, as the State points out, Woods' lack of understanding about *Giglio* and *Brady* issues until "recently" is not sufficient to excuse his untimely filing. See *State v. Woodward*, 288 Kan. 297, 304, 202 P.3d 15 (2009) (holding that the "recent discovery" of a legal concept is not "'newly discovered evidence'" that justifies raising an argument

11

based on that concept in an untimely fashion); *Harris v. State*, No. 120,942, 2020 WL 1482424, at \*2-3 (Kan. App. 2020) (unpublished opinion) (holding that a prisoner's "ignorance of the law"—*i.e.*, his or her "'lack of legal knowledge, training, and familiarity with the rules of procedure'"—"does not constitute manifest injustice" that requires consideration of an untimely 60-1507 motion), *petition for rev. on other grounds filed* April 24, 2020. And Woods did not tell the district court when he received the information that led him to believe there were *Giglio* and *Brady* issues.

By not articulating when he received the information or even clearly what the information is, Woods failed to prove by a preponderance of the evidence that he did not have the information during any of his previous K.S.A. 60-1507 proceedings or that it could not have been discovered until now. Thus, Woods' alleged *Giglio*/Brady evidence is not a sufficient reason for the untimely filing of his third K.S.A. 60-1507 motion.

*A colorable claim of actual innocence*

The second way a movant can establish that a district court must consider an untimely motion to prevent a manifest injustice is by making "a colorable claim of actual innocence." See K.S.A. 2019 Supp. 60-1507(f)(2)(A). "As used herein, the term actual innocence requires the prisoner to show it is more likely than not that no reasonable juror would have convicted the prisoner in light of new evidence." K.S.A. 2019 Supp. 60-1507(f)(2)(A).

Woods argues on appeal that he "made allegations in his motion regarding actual innocence." Notably, he does not provide a pinpoint citation to the record on appeal at which we can find those allegations of actual innocence. A review of the K.S.A. 60-1507 motion reveals that Woods mentioned actual innocence in only two places. First, he asked the district court to order the State to provide all evidence required by *Giglio* and *Brady* so that he could examine it, arguing that only then would he have a "fair

opportunity to show fully movant['s] actual[] innocents [*sic*] [and] obtain either a new trial or dismissal of charges in full." Second, while alleging prosecutorial misconduct at sentencing, Woods argued that the State made the baseless assertion at sentencing that he had started the shooting instead of the codefendant, "[w]hich [is] to say Mitchell was shot first [and] to say [co-defendant] started the shooting then inclines to movant[']s point of 'actual[] innocents [*sic*].'" On appeal, Woods argues: "The autopsy results, circumstantial evidence, and witness statements indicating a co-defendant was the actual perpetrator of the crime, as set forth in [Woods'] motion, coupled with the newly discovered evidence that there were credibility issues with the investigating law enforcement officers, create a colorable claim of actual innocence."

But as the State notes, this court has already considered and resolved against Woods the propriety of a claim of actual innocence when Woods pled guilty to the crime of conviction. See *Woods III*, 52 Kan. App. 2d at 966. By voluntarily entering a guilty plea, Woods admitted "'the truth of the charge and every material fact alleged therein.'" 52 Kan. App. 2d at 966. Although Woods has repeatedly attacked the validity of his guilty plea, his plea has repeatedly been upheld. And "[w]here judgment and sentence have been entered upon a plea of guilty, there can be no review of the sufficiency of the evidence in a K.S.A. 60-1507 proceeding." 52 Kan. App. 2d at 967. As this court held in *Woods III*, an assertion of actual innocence does not trump the "longstanding rule that a freely and voluntarily entered guilty plea bars a collateral attack on the sufficiency of the evidence." 52 Kan. App. 2d at 968.

Woods neither acknowledges this prior holding nor offers any reason why this panel should decide differently in the present appeal. Even if this court liberally construes Woods' third K.S.A. 60-1507 motion to include a claim of actual innocence, the fact remains that by pleading guilty, he admitted to the facts underlying his conviction and may not collaterally attack his conviction on the basis of insufficient evidence or actual innocence. Because he is precluded from making these arguments, it cannot be manifest

13

injustice to deny the consideration of their merits. Woods failed to show by a preponderance of the evidence that manifest injustice would result from the district court's refusal to consider the merits of his untimely third K.S.A. 60-1507 motion. Thus, the district court did not err in denying the motion as untimely.

*Did Woods establish exceptional circumstances that justified consideration of his successive K.S.A. 60-1507 motion?*

"[A] movant has the burden of establishing exceptional circumstances to avoid an abuse-of-remedy dismissal of a second or successive 60-1507 motion." *Dawson v. State*, 310 Kan. 26, 36, 444 P.3d 974 (2019). "'"[E]xceptional circumstances are unusual events or intervening changes in the law that prevented the defendant [from] raising the issue in a preceding [K.S.A.] 60-1507 motion."' [Citations omitted.]" *Nguyen v. State*, 309 Kan. 96, 109, 431 P.3d 862 (2018).

Woods argues that his "colorable claim of actual innocence based on the failure of the State of Kansas to disclose *Giglio/Brady* information on the investigating law enforcement officers" establishes exceptional circumstances to allow consideration of his successive motions. But Woods' claim that the State failed to disclose evidence that could have been used to impeach Chisholm and Espinoza is not a claim of actual innocence. It is, at best, a hybrid claim of prosecutorial misconduct and ineffective assistance of trial counsel. And, as we have already discussed, Woods has not sufficiently articulated— either in the district court or here on appeal—when or how he learned that this alleged impeachment evidence exists. Thus, he has not established by a preponderance of the evidence that exceptional circumstances prevented him from raising his *Giglio* and *Brady* claims in one of his prior K.S.A. 60-1507 motions. As such, the district court did not err in denying this K.S.A. 60-1507 motion as successive.

## Did the District Court Err by Ignoring
## Woods' Motion to Amend His K.S.A. 60-1507 Motion?

In his pro se supplemental brief, Woods argues that the district court erred by failing to recognize that his jurisdictional argument and his assertion of a defective complaint—raised in his motion to amend this K.S.A. 60-1507 motion in the district court—are issues that he may raise at any time. He also contends that the State's failure to adhere to the alleged plea agreement that he claims should have resulted in a lower sentence constitutes a breach of contract that "voids the plea itself." He asks the court to vacate his sentence and reverse his convictions because the defective complaint deprived the district court of jurisdiction. The State does not respond to these arguments.

First, Woods' assertion that the district court "ignored [his] 60-1507 motion to alter or amend in whole" is inaccurate. The district court held: "All claims raised by movant in this motion *and his motion to alter or amend* either have been or could have been raised in his prior motions and are therefore barred from subsequent litigation." (Emphasis added.) The district court further held that "[t]he instant motion and subsequent motion to amend or alter are untimely" and "are barred as being successive." The journal entry makes clear that the district court considered Woods' motion to alter and amend and the additional claims raised therein.

Next, Woods argues that under *State v. Fitzgerald*, 308 Kan. 659, 423 P.3d 497 (2018); *State v. Rodriguez*, 305 Kan. 1139, 390 P.3d 903 (2017); *State v. Dunn*, 304 Kan. 773, 375 P.3d 332 (2016); *State v. Sales*, 290 Kan. 130, 135, 224 P.3d 546 (2010); and *United Sates v. Peter*, 310 F.3d 709, 713-16 (11th Cir. 2002), he may raise at any time an argument that a complaint was statutorily insufficient and thus the district court lacked jurisdiction over him. But these cases do not support Woods' assertion.

15

In *Sales*, as in many other cases, the Kansas Supreme Court noted that "[s]ubject matter jurisdiction may be raised at any time." 290 Kan. at 135; see also *Dunn*, 304 Kan. at 784 ("The existence of subject matter jurisdiction cannot be waived, and its nonexistence may be challenged at any time."). But in *Dunn*, the Kansas Supreme Court examined the relationship between subject matter jurisdiction and charging documents at length and held:

> "Charging documents do not bestow or confer subject matter jurisdiction on state courts to adjudicate criminal cases; the Kansas Constitution does. Charging documents need only show that a case has been filed in the correct court, e.g., the district court rather than municipal court; show that the court has territorial jurisdiction over the crime alleged; and allege facts that, if proved beyond a reasonable doubt, would constitute a Kansas crime committed by the defendant." 304 Kan. at 811.

In his motion to alter and amend, Woods did not argue that the complaint in his criminal case was filed in the wrong court, that it did not demonstrate territorial jurisdiction, or that it did not allege facts that, if sufficiently proved, would prove that he committed a Kansas crime. Rather, he argued that the State was aware of evidence that Woods asserts showed he was not guilty of the crimes charged. Even if a defective complaint deprived a district court of jurisdiction—which *Dunn* clearly held it does not— Woods did not allege a defect recognized under *Dunn*.

*Rodriguez* and *Dunn* addressed situations in which the complaint failed to allege facts that, if proven, would have supported the required intent elements of the crimes. See *Rodriguez*, 305 Kan. at 1147; *Dunn*, 304 Kan. at 820-21. Woods makes no such argument, instead focusing on whether the evidence supported the charges. So *Rodriguez* and *Dunn* do not help him.

Similarly, *Fitzgerald* is factually and legally materially distinguishable from Woods' situation. In *Fitzgerald*, the State charged the crime of causing a child under 14 to

16

engage in oral copulation with another person, but then "all parties thereafter proceeded with the case as though Fitzgerald had been charged with engaging in sodomy with [the victim] himself." 308 Kan. at 660. The evidence at trial showed that Fitzgerald personally sodomized his victim, the relevant jury instruction listed the elements of the uncharged crime, and Fitzgerald was convicted of and sentenced for the uncharged crime. Contrary to Woods' argument here, Fitzgerald did not allege that the district court lacked jurisdiction because of a defective charging document; he argued that the proof the State presented at trial was not sufficient to support the crime actually charged.

Likewise, *Peter* is distinguishable. In *Peter*, the Eleventh Circuit held that the district court lacked jurisdiction to accept a plea when the indictment failed to allege conduct that constituted a federal crime. 310 F.3d at 714-15. But in that case, the indictment alleged "only a non-offense." 310 F.3d at 715. Here, Woods does not argue that the complaint charged him with a non-offense; he argues that the complaint did not allege certain evidence known to the State at the time it charged him.

While Woods is correct that the district court did not explicitly address his argument that a defective complaint deprived the district court of jurisdiction over his original criminal prosecution, the district court did find that Woods' current K.S.A. 60-1507 motion and his motion to alter and amend were untimely and successive. The arguments Woods made in his motion to alter and amend do not implicate jurisdiction nor do they allege a complaint defect recognized in *Dunn*. Like any other arguments brought in a successive and untimely K.S.A. 60-1507 motion, Woods bore the burden to establish why the district court should consider it on the merits.

Our Supreme Court provided relevant guidance in *State v. Robertson*, 309 Kan. 602, 603, 439 P.3d 898 (2019), an appeal from the summary denial of a motion to correct illegal sentence that sought the reversal of convictions based on an allegedly defective complaint that purportedly deprived the district court of jurisdiction. After holding that a

17

motion to correct illegal sentence was not the appropriate vehicle to seek reversal of his convictions due to an allegedly defective complaint, the *Robertson* court acknowledged that Kansas courts have liberally construed pro se motions seeking relief from a conviction as being brought under K.S.A. 60-1507. 309 Kan. at 608. But the *Robertson* court held that even construing the motion as one brought under K.S.A. 60-1507

> "does not get Robertson out of the procedural woods. He faces two other procedural obstacles.
>
> "First, Robertson had earlier pursued relief under 60-1507, and that statute is clear that a district court is not 'required to entertain a second or successive motion.' Robertson has argued no exceptional circumstances warranting a successive motion. Nor do we see any. Robertson could have raised these arguments in an earlier proceeding. He did not. The district court did not have to entertain Robertson's motions had he raised them under K.S.A. 2018 Supp. 60-1507.
>
> "Second, Robertson's [motion was] filed outside the one-year period for seeking 60-1507 relief and Robertson does not argue manifest injustice would support extending this limitation. Thus, Robertson would be procedurally barred from relief even if we convert [his motion] to a motion under K.S.A. 2018 Supp. 60-1507. [Citations omitted.]" 309 Kan. at 608-09.

Just like *Robertson*, Woods has previously pursued relief under K.S.A. 60-1507 and, as explained above, he has not successfully argued exceptional circumstances warranted consideration of this successive motion. Woods could have raised arguments related to a defective complaint in earlier K.S.A. 60-1507 proceedings, but he did not. Woods' current K.S.A. 60-1507 motion is also untimely, and he has not successfully argued that manifest injustice will occur if his current claims are not considered on their merits. Thus, the district court correctly denied the K.S.A. 60-1507 motion as well as the motion to alter and amend.

Affirmed.