NOT DESIGNATED FOR PUBLICATION

No. 120,416

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DESHEA E. BENTON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JOHN J. KISNER, judge. Opinion filed August 14, 2020. Affirmed.

*Korey A. Kaul*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BUSER, P.J., ATCHESON, J., and WALKER, S.J.

PER CURIAM: The Sedgwick County District Court denied Defendant Deshea Benton's presentencing motion to withdraw his guilty pleas to a pair of felonies arising from his encounter with and attack on a Wichita police officer. The district court appointed a new lawyer for Benton and held an evidentiary hearing on the motion that Benton had prepared and filed on his own. We find no abuse of discretion in the district court's denial of the motion and affirm the ruling.

1

In December 2017, the State charged Benton with one count of attempted robbery, a severity level 7 person felony; one count of battery against a law enforcement officer, a severity level 7 person felony; and one count of driving with a suspended license, a class B nonperson misdemeanor. The precipitating incident occurred about 10 days before the charges were filed. Given the way the case unfolded, we draw the circumstances underlying the charges from the probable cause affidavit supporting the complaint, recognizing that the description has never been tested in an adversarial court hearing.

Wichita Police Officer Jared Thomas stopped Benton because the car he was driving had a defective side taillight. After Benton pulled over, his passenger jumped out and ran away. Thomas drew his handgun and ordered Benton out of the car. Benton was argumentative with Thomas. Thomas holstered his firearm and attempted to handcuff Benton. But Benton refused to comply, struggled with Thomas, and punched the officer in the mouth. During the struggle, Thomas fell to one knee and felt Benton pulling on his holstered handgun. Fearing for his safety, Thomas let go of Benton and focused on controlling his gun and radioing for help. Benton then forced Thomas to the ground face down and fled. Thomas suffered a cut and swollen lip, and his AXON body camera and eyeglasses were knocked off during the struggle.

Thomas identified Benton from known photographs and then confirmed his identification after reviewing the body camera video. Several days later, another Wichita police officer stopped Benton and arrested him. After being given *Miranda* advisories, Benton admitted to driving the car that Thomas stopped, arguing with the officer, and running away. But Benton denied struggling with, punching, or otherwise physically confronting or engaging with Thomas.

The district court appointed a lawyer to represent Benton, and Benton was released from jail on bond about a week after being charged. Benton's lawyer continued the case several times before leaving the public defender's office. Another public defender took over the representation and met with Benton. In February 2018, Benton was charged in a separate criminal case. His bond was revoked. Benton's lawyer in this case requested and received additional continuances.

As developed in the later testimony during the hearing on Benton's motion, Benton told his lawyer he was unhappy with the delays and how the case was progressing. At the scheduled preliminary hearing in early April 2018, Benton voiced his displeasure to the district court, citing the continuances, his inability to review some of the police reports and other discovery, and the plea offer the prosecutor had extended only that morning. The district court asked Benton if he was requesting that a new lawyer be appointed to represent him. Benton said he did not want another appointed lawyer but indicated he was considering hiring a lawyer. The district court said the case would not be continued again for him to decide on hiring a lawyer. The district court pointed out a retained lawyer could pick up Benton's representation later in the proceedings. The district court then recessed the hearing so Benton could talk with his appointed lawyer about how to proceed.

After the recess, Benton told the district court he had decided to accept the plea offer from the State. Before starting the formal plea hearing, the district court told Benton, "I don't want [your lawyer] or anybody else to pressure you into doing something you don't want to do here today; okay?" Benton responded, "Yes, sir." At the start of the plea hearing, the district court reiterated Benton needed to understand what he was going to do in entering a plea and that was what he actually wanted to do.

The agreement with the State called for Benton to plead guilty to the attempted robbery and battery of a law enforcement officer charges. The traffic violation would be

3

dismissed. The State would request that Benton serve consecutive prison terms on the felonies based on the low presumptive guidelines sentences. Benton reserved the right to ask the district court to impose any lawful sentence. The written plea agreement included the State's belief that Benton had a criminal history score of B—a supposition that was correct.

Pertinent here, during the plea hearing, the district court:

• Outlined the rights Benton was giving up by entering a plea and the possible sentences he faced on the remaining charges, paralleling representations in the written acknowledgment of plea Benton had signed;

• Confirmed with Benton that he had sufficient time to confer with his lawyer and was satisfied with the lawyer's services; and

• Again asked Benton, "All right, anybody pressure you in any way: Mr. Byfield, family members, anybody else pressure you to do something you don't want to do here today?" And Benton responded, "No, sir, Your Honor."

Only then did the district court accept Benton's pleas and find him guilty of attempted robbery and battery of a law enforcement officer.

Five days later, the district court received Benton's motion to withdraw his pleas. Benton asserted he was "pressured" and under "duress" when he entered his pleas and pointed to a threat from the State to amend the charges if he did not plead. He also asserted that although he had reviewed some police reports and photos, he had not been fully informed by his lawyer about the evidence or the legal consequences of his pleas. Benton characterized the legal representation he received as "lackluster," anticipating the governing legal standard.

4

The district court appointed a new lawyer to represent Benton going forward and scheduled an evidentiary hearing on the motion to withdraw the pleas. At the hearing in July, Benton testified that his lawyer never showed him any police reports or any video from Thomas' body cam. According to Benton, the lawyer never discussed his criminal history or special sentencing rules that might apply in this case. He reiterated that the lawyer simply urged him to take the plea offer and never explained the implications of the plea to him or showed him any reports or the video.

The lawyer who represented Benton leading up to and at the plea hearing also testified. He said he provided some discovery to Benton and had reviewed the body cam video and described what it showed to Benton. According to the lawyer, Benton believed the video would establish there was no problem with the taillight on his car, calling into question the legal basis for the stop. The lawyer said he told Benton the video did not support his belief about the stop.

The lawyer testified that when the prosecutor outlined the State's proposed plea agreement the prosecutor stated that if Benton didn't accept the offer before the preliminary hearing, he would amend the attempted robbery charge to attempted aggravated robbery. The lawyer conveyed the information to Benton and discussed its ramifications. For a defendant with a criminal history B, the amendment of the attempted robbery charge would jump the presumptive guidelines sentence of 27 to 31 months to 114 to 128 months.

After hearing the evidence, the district court concluded Benton had not been misled or impermissibly coerced, his pleas had been knowingly entered, and his lawyer had provided legally adequate representation. In coming to that conclusion, the district court specifically noted the *Edgar* factors and considered the overall circumstances

5

surrounding Benton's pleas. See *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006). The district found nothing rising to the level of good cause to support Benton's motion.

At a hearing about a week later, the district court sentenced Benton to 31 months in prison on the battery of a law enforcement officer conviction, reflecting the high presumptive guidelines term, and to 12 months in prison on the attempted robbery conviction. The district court specifically declined to apply any special rules and ordered the sentences served concurrently with a postrelease supervision period of 12 months. Benton has timely appealed.

LEGAL ANALYSIS

For his sole issue on appeal, Benton challenges the district court's denial of his motion to withdraw his pleas. A defendant has the right to withdraw a plea before sentencing for "good cause" and in the district court's "discretion." K.S.A. 2019 Supp. 22-3210(d)(1). District courts should look at three primary factors to determine if a defendant has shown good cause to withdraw a plea: (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. *State v. Garcia*, 295 Kan. 53, 62-63, 283 P.3d 165 (2012) (noting that these considerations—commonly known as the *Edgar* factors—establish a sound benchmark); *State v. Williams*, 290 Kan. 1050, 1053, 236 P.3d 512 (2010); *Edgar*, 281 Kan. at 36. All three factors need not favor the defendant to permit relief from a plea, and the district court should consider other relevant circumstances based on the facts of the particular case. See *Garcia*, 295 Kan. at 63 (district court not confined to *Edgar* factors); *Williams*, 290 Kan. at 1054 (all of the *Edgar* factors need not favor defendant; court may consider other circumstances); *State v. Aguilar*, 290 Kan. 506, 512-13, 231 P.3d 563 (2010).

Because the governing statute expressly affords the district court discretion in ruling on a defendant's motion to withdraw a plea before sentencing, an appellate court reviews the determination for abuse of discretion. *State v. White*, 289 Kan. 279, 284-85, 211 P.3d 805 (2009). A district court abuses its discretion if the result reached is "arbitrary, fanciful, or unreasonable." *Unruh v. Purina Mills*, 289 Kan. 1185, 1202, 221 P.3d 1130 (2009). That is, no reasonable judicial officer would have come to the same conclusion if presented with the same record evidence. An abuse of discretion may also occur if the district court fails to consider or to properly apply controlling legal standards. *State v. Woodward*, 288 Kan. 297, 299, 202 P.3d 15 (2009). A district court errs in that way when its decision "'goes outside the framework of or fails to properly consider statutory limitations or legal standards.'" 288 Kan. at 299 (quoting *State v. Shopteese*, 283 Kan. 331, 340, 153 P.3d 1208 [2007]). Finally, a district court may abuse its discretion if a factual predicate necessary for the challenged judicial decision lacks substantial support in the record. *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011) (outlining all three bases for an abuse of discretion). On review, we are bound by the district court's credibility determinations and may not reweigh the evidence presented during the hearing on Benton's motion. See *State v. Anderson*, 291 Kan. 849, Syl. ¶ 3, 249 P.3d 425 (2011) (noting deference to credibility findings and prohibition on weighing of conflicting evidence and applying rule to determination of motion to withdraw plea).

Benton has focused his argument on purported deficiencies in his lawyer's representation and the effect of the State's "threat" to up the severity of the charges against him. The two overlap to some extent, since Benton suggests his lawyer didn't fully explain the implications of his plea or of the State's position. He also faulted his lawyer for failing to allow him to see the body cam video of the incident with Officer Thomas. To satisfy the *Edgar* factor bearing on legal representation, the defendant must show his or her legal representation amounted to "lackluster advocacy," a less demanding standard than incompetence violating the right to counsel protected in the Sixth Amendment to the United States Constitution. See *State v. Schaefer*, 305 Kan. 581, 589,

385 P.3d 918 (2016). And the defendant must show prejudice as a result of any substandard representation. In the context of a motion to withdraw a plea, the defendant has to establish he or she would have gone to trial rather than having entered the plea. See *State v. Richardson*, 307 Kan. 2, 6, 404 P.3d 671 (2017).

Benton has failed to show that his legal representation was lackluster or otherwise substandard. The plea agreement was advantageous to Benton, especially in light of the prosecutor's stated plan to elevate the attempted robbery charge to attempted aggravated robbery—a substantially more serious charge with a substantially longer sentence. In the agreement, Benton reserved the right to argue for any lawful sentence and ultimately avoided the application of any special rules that might have enhanced the punishment. In short, concurrent sentences on two felonies involving the use of force against the victim resulting in a 31-month term of imprisonment was an advantageous result.

As the district court found, Benton's lawyer discussed the case, the evidence, and potential sentences with him. Benton makes no headway in the opposite direction because he did not get to see the video. Even if the video tended to support Benton's theory that there was no problem with the taillight, that would not have been a defense to his fighting with the officer and then fleeing.

Benton had other material problems with his claim for withdrawing his plea. He testified he received no police reports or other discovery from his lawyer—a point both the lawyer and Benton's own motion contradicted. Moreover, at the plea hearing, Benton repeatedly assured the district court he was willingly going forward with the plea agreement and had discussed the matter to his satisfaction with his lawyer. And Benton expressly disclaimed having been pressured to accept the plea offer. The district court necessarily found that Benton had failed to overcome those quite studied and repeated representations he made during the plea hearing. In that respect, the district court correctly recognized Benton fairly and understandingly entered the guilty pleas.

Finally, the prosecutor's representation about enhancing the robbery charge was not itself impermissible or unduly coercive. In negotiating a plea agreement, the State may suggest more severe charges might be lodged if the offer is turned down, so long as those charges would fairly be within the evidence. See *State v. Robinson*, 233 Kan. 384, 388-89, 622 P.2d 1275 (1983) (recognizing the threat of more severe punishment is an inevitable and permissible attribute of the plea negotiation process); *State v. Johnson*, 40 Kan. App. 2d 397, 402, 192 P.3d 661 (2008) ("guilty plea was not coerced simply because [defendant] was facing the prospect of additional charges if she did not enter the plea"). As a legal matter, the State's position here was functionally the obverse of an offer to reduce one or more of the then-pending charges in exchange for a plea. And it is not inherently suspect, let alone improper.

The record shows the district court recognized the correct legal framework for evaluating a motion to withdraw a plea and understood the factual circumstances surrounding Benton's motion. There was no abuse of discretion in those respects. We are, therefore, left to ask whether the district court's ruling was so wide of the mark that no other district court would have ruled the same way in a comparable situation. We are confident the ruling is not a singular outlier on the judicial landscape.

Affirmed.