No. 102,198

STATE OF KANSAS, *Appellee*, v. ROBERT C. PETERSON, *Appellant*.

(293 P.3d 730)

Opinion filed February 8, 2013.

*Christina M. Kerls*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Patrick J. Hurley*, assistant district attorney, argued the case, and *Nicole Romine*, assistant district attorney, *Charles E. Branson*, district attorney, and *Steve Six*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

BEIER, J.: Defendant Robert Peterson pleaded no contest to attempted sexual exploitation of a child after digital photographs of children engaged in sexual acts were found on his work computer. The district court judge sentenced Peterson to 52 months in prison, with lifetime postrelease supervision. In Peterson's pe-

tition for review, he claims that (1) the State violated his plea agreement by failing to remain silent at sentencing; (2) lifetime postrelease supervision constitutes cruel and/or unusual punishment; and (3) his sentence violates his rights under the Sixth and Fourteenth Amendments to the United States Constitution because aggravating factors were not proved to a jury beyond a reasonable doubt.

We vacate Peterson's sentence and remand to the district court for further proceedings based on the State's violation of the plea agreement. This result eliminates any need to reach Peterson's second and third issues.

## FACTUAL AND PROCEDURAL BACKGROUND

Peterson was charged with two counts of sexual exploitation of a child under K.S.A. 2006 Supp. 21-3516(a)(2). In exchange for Peterson's plea of no contest, the State amended the information to a single count of attempted sexual exploitation of a child in violation of K.S.A. 21-3301 and K.S.A. 2006 Supp. 21-3516(a)(2).

As part of the plea agreement, the State agreed not to object to Peterson's motion for dispositional departure to probation. The State also agreed to remain silent at sentencing unless there were misstatements of fact.

At the first of two hearings on sentencing, the district judge found Peterson to be a persistent sex offender because of a 1994 sexual battery conviction. Under the Kansas Sentencing Guidelines Act, this finding doubled the duration of Peterson's presumptive sentence.

At the same hearing, Peterson called clinical psychologist Robert Barnett as a witness. Barnett had not been present at Peterson's preliminary hearing. Barnett testified that he conducted a clinical interview of and testing on Peterson and, based on the facts of the case as provided to him by Peterson, concluded that Peterson was "a good candidate for probation." Peterson had told Barnett that the images of child pornography were from "pop-up" Internet windows that displayed the images after Peterson did a search for information on a child's murder that had been the subject of widespread national media coverage.

The prosecutor at the hearing, Amy McGowan, was not the same prosecutor who had handled the plea agreement with Peterson, but she did handle his preliminary hearing. Peterson's counsel had agreed to allow McGowan to cross-examine Barnett. McGowan focused her questions on the information Peterson had provided to Barnett, and Barnett testified that he was aware two girls had accused Peterson of fondling them in 1994. Barnett admitted he was unaware that there were, in fact, five different girls who had made accusations; he also was unaware of the children's ages. Barnett also did not know that, on the two occasions originally charged in this case, Peterson was searching for variations of the term "lolita" and visiting "lolita" websites while at work.

Peterson objected to McGowan's line of questioning on the grounds that it presented the same evidence offered at Peterson's preliminary hearing and went "beyond the scope of the plea agreement in this case which was that the State was going to stand silent at sentencing." The district court judge overruled the objection because Peterson had provided an incomplete history to Barnett. The judge said Barnett had "a right to know" all of the information imparted by McGowan's questions in order to form his professional opinion.

McGowan then continued her cross-examination. Barnett said he was unaware that 1,297 images of female children in swimsuits and underwear and 617 images of nude children and children engaged in sexual acts were found on Peterson's work computer. Barnett nevertheless maintained that he did not believe Peterson was a pedophile or a risk to the community. McGowan then asked: "But it's been established [Peterson] hasn't been honest with you about his prior offense or this one?" Barnett answered: "Yes."

After Barnett's testimony, Peterson's counsel, Sarah Swain, presented her argument to the district court in support of the motion for dispositional departure. Swain first reminded the court of the State's plea agreement promise to remain silent at sentencing. She continued: "It seems clear Ms. McGowan wants to re-litigate the facts in this case."

After Swain's argument, McGowan spoke:

"Your Honor, I'd like to address—I believe Ms. Swain basically accused me of violating the plea agreement so I wanted to talk about that if I could.

"Ms. Wilson was the prosecutor who had handled the plea and she wrote very specific notes about the sentencing agreement and it says, I quote, 'The State will stand silent if the defendant does not make factual misstatements.'

"I think when I read through Dr. Barnett's report—before you convened court, I asked Ms. Swain if I would be allowed to question Dr. Barnett because I don't usually see that when there is an expert as being part of the standing silent agreement, so I did have her permission to do that prior to beginning court. And I just believe that the plea agreement would allow me and also her permission to allow me to cross the doctor. I'm not going to make any argument of that plea agreement with the exception of what Dr. Barnett had said. I don't think it's fair for the doctor to try to reconsider his findings on the fly up on the stand when he has all of that information thrown at him. But it does show Mr. Peterson wasn't being honest with the evaluator about what his involvement was in this particular case or in his other case, and I think that should be considered by the court that he cannot or will not address his looking at child pornography or desire to look at child pornography. That's all I have to say."

At the second hearing on sentencing, the district judge denied Peterson's dispositional departure motion and sentenced him to 52 months in prison with lifetime postrelease supervision.

On Peterson's appeal to the Court of Appeals, the panel relied on *State v. Woodward*, 288 Kan. 297, 202 P.3d 15 (2009), and held that the prosecutor was not required to "stand silent at sentencing" and that her statements were permissible to correct factual misstatements. *State v. Peterson*, No. 102,198, 2010 WL 3063159, at *3 (2010) (unpublished opinion). The panel dismissed Peterson's second claim as unpreserved, and it determined that it lacked jurisdiction to address his third claim under *State v. Johnson*, 286 Kan. 824, 190 P.3d 207 (2008). *Peterson*, 2010 WL 3063159, at *4-5.

The Court of Appeals panel did not focus explicitly on the prosecutor's question to Barnett about Peterson's honesty or her statement to the sentencing court that "Mr. Peterson wasn't being honest with the evaluator about what his involvement was in this particular case or in his other case, and I think that should be considered by the court that he cannot or will not address his looking at child pornography or desire to look at child pornography."

This court granted Peterson's petition for review.

## Discussion

An allegation that the State breached a plea agreement presents a question of law over which this court exercises unlimited review. *State v. Antrim*, 294 Kan. 632, 634, 279 P.3d 110 (2012).

A plea agreement is a contract between the State and the accused, and the exchanged promises must be fulfilled by both parties. See *Santobello v. New York*, 404 U.S. 257, 262, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971). "An expectation inherent in all plea agreements is that each party will honor the terms of the agreement." *Woodward*, 288 Kan. at 300 (citing *State v. Boley*, 279 Kan. 989, 992, 113 P.3d 248 [2005]). The State's breach of a plea agreement denies the defendant due process. See *Santobello*, 404 U.S. at 265-67 (Douglas, J., concurring); *State v. Wills*, 244 Kan. 62, 65, 765 P.2d 1114 (1988) (citing *Mabry v. Johnson*, 467 U.S. 504, 104 S. Ct. 2543, 81 L. Ed. 2d 437 [1984]); *State v. Foster*, 39 Kan. App. 2d 380, Syl. ¶ 1, 180 P.3d 1074, *rev. denied* 286 Kan. 1182 (2008). "If the State fails to perform its obligations under a bargained plea agreement, then the court must decide whether justice requires that the promise be fulfilled or whether the defendant should have the opportunity to withdraw his or her plea." *Woodward*, 288 Kan. 297, Syl. ¶ 2.

"[A]pplication of fundamental contract principles is generally the best means to fair enforcement of a plea agreement, as long as courts remain mindful that the constitutional implications of the plea bargaining process may require a different analysis in some circumstances." *State v. Copes*, 290 Kan. 209, 217, 224 P.3d 571 (2010).

In *Woodward*, defendant David Woodward agreed to plead guilty to kidnapping, two counts of sexual exploitation of a child, rape, indecent liberties with a child, and felony murder in connection with the killing of a 5-year-old child and the sexual molestation of an 8-year-old child. In exchange, the State agreed to recommend a particular sentence, and it did so at the sentencing hearing. In addition to making the recommendation, however, the prosecutor reminded the judge of the heinous nature of the offenses, and the losses suffered by the victims' families. The prosecutor also at-

tempted to rebut the assertion that the child's killing was accidental. The district judge imposed a sentence that exceeded the recommended sentence, and Woodward claimed on appeal that the district court's decision was attributable to the manner in which the prosecutor presented the recommendation at the hearing.

This court held:

"The State can breach a plea agreement by effectively arguing against the negotiated sentencing recommendation. However, if the State actually makes the sentence recommendation that it promised, the prosecutor's further comments in support of the recommended sentence do not breach the plea agreement so long as the comments do not effectively undermine the recommendation." *Woodward*, 288 Kan. 297, Syl. ¶ 3.

We reasoned that the recommended sentence was not the minimum the court could impose, and the State was "free to argue why the recommended sentence was also the most appropriate sentence to impose under the circumstances." 288 Kan. at 302. In our view, the prosecutor had "directly tailored" her arguments to address the defense attempt to portray Woodward in a favorable light, and the plea agreement "did not require the prosecutor to ignore the defense's attempts to minimize Woodward's culpability." 288 Kan. at 302.

In this case, the Court of Appeals determined that Peterson's situation was similar to that in *Woodward*. *Peterson*, 2010 WL 3063159, at *3. The panel stated: "Because factual misstatements were contained in Barnett's report, the State was not required to stand silent at sentencing." 2010 WL 3063159, at *3. Accordingly, the panel found that the State did not violate the terms of the plea agreement. 2010 WL 3063159, at *3.

We disagree. *Woodward* is not directly on point and is not dispositive of this case. Unlike *Woodward*, where there was no indication that the State was required to stand silent at sentencing, Peterson's plea agreement did so require. In addition, the rationale of *Woodward*—that a prosecutor can argue in support of a recommended sentence when a defendant may receive a lesser sentence—is inapplicable when no recommended sentence has been agreed upon; when the defendant is requesting the lowest possible sentence beyond time served; and when the State has explicitly

contracted away its right to argue in favor of any particular sentence.

A review of precedent in Kansas and other jurisdictions reveals three typical plea agreement promises prosecutors make that govern their conduct at sentencing: (1) a promise to recommend a mutually agreed upon sentence; (2) a promise to take no position on a portion or specific aspect of the sentence, *e.g.*, whether consecutive or concurrent sentences should be imposed; and (3) a promise to remain silent at sentencing. *Woodward* controls the first type of promise. See *State v. Urista*, 296 Kan. 576, 584-85, 589-90, 293 P.3d 738 (2013). *Woodward* could arguably be extended to the second type, but we need not reach that issue. *Woodward* does not apply to the third type, which is the one at issue here and which raises an issue of first impression in this jurisdiction.

Other courts have considered whether a prosecutor breaches a plea agreement by speaking at sentencing after agreeing to stand silent or mute. See *Colvin v. Taylor*, 324 F.3d 583, 590 (8th Cir. 2003) ("[P]rosecutors may sometimes speak even though they have promised not to, and still not run afoul of *Santobello*."); *Margalli-Olvera v. I.N.S.*, 43 F.3d 345, 354 (8th Cir. 1994) (government's failure to remain silent regarding deportation breached plea agreement in which prosecutor promised "the United States" would remain silent); *United States v. Greenwood*, 812 F.2d 632, 634, 635-37 (10th Cir. 1987) (prosecutor's statements about defendant's lack of remorse, need to deter others from committing same crime breached plea agreement in which government had promised to remain silent at sentencing); *United States v. Bronstein*, 623 F.2d 1327, 1330 (9th Cir. 1980) (government's comments regarding alleged unrelated criminal conduct not directed to any factual misrepresentations made by defendant, constituted breach of plea agreement); *Lee v. State*, 506 N.E.2d 37, 37-38 (Ind. 1987) (State did not breach plea agreement by describing victim in favorable terms to correct misstatement of fact when court, defense counsel described victim as "drug dealer"); *State v. King*, 576 N.W.2d 369, 370 (Iowa 1998) (State breached plea agreement promise to remain silent at sentencing by requesting court follow PSI recommendation); *Burroughs v. State*, 30 Md. App. 669, 674, 354 A.2d

205 (1976) (prosecutor breached agreement to remain silent at sentencing by saying, " 'Your Honor, the State considers this to be a most serious case' "); *State v. Sidzyik*, 281 Neb. 305, 311, 313, 795 N.W.2d 281 (2011) ("The failure of the State to remain silent in violation of a plea agreement is a material breach."; State breached plea agreement.promise to remain silent by informing court that " '[t]he State's position is stated in the PSI and we would submit on the PSI.' "); *Sullivan v. State*, 115 Nev. 383, 388 n.4, 990 P.2d 1258 (1999) (promise to remain silent at sentencing does not require State to stand mute in face of factual misstatements, withhold relevant information from court); *State v. Murnahan*, 117 Ohio App. 3d 71, 76-77, 689 N.E.2d 1021 (1996) (prosecutor breached plea agreement requirement to remain silent by arguing for maximum sentence); *Heiligmann v. State*, 980 S.W.2d 713, 714-15 (Tex. App. 1998) (State's use of rebuttal witness to rebut defendant's effort to contest statements in PSI report did not violate plea agreement in which State agreed to remain silent); *State v. Moederndorfer*, 141 Wis. 2d 823, 832, 416 N.W.2d 627 (Wis. App. 1987) ("[A]n agreement for the prosecution's silence at sentencing is not violated when the prosecutor merely corrects inaccurate information given to the trial court."); *Jackson v. State*, 902 P.2d 1292, 1294 (Wyo. 1995) (State did not breach plea agreement by relating information to court about "near altercation" involving defendant that occurred after PSI report completed but before sentencing).

In *State v. Williams*, 249 Wis. 2d 492, 518-19, 637 N.W.2d 733 (2002), the Wisconsin Supreme Court identified a "fine line" that the State must walk in an effort to "balance its duty to convey relevant information to the sentencing court against its duty to honor the plea agreement." According to the court, a prosecutor may not agree as part of a plea agreement to keep relevant information from the sentencing judge, as such an agreement is against public policy. *Williams*, 249 Wis. 2d at 518-19 ("This rule is intended to protect the integrity of the sentencing process by ensuring that the court charged with determining the sentence is not intentionally deprived of relevant information concerning the accused at the time of sentencing."). We recognized a similar duty

in *State v. Johnson*, 258 Kan. 100, 107, 899 P.2d 484 (1995) ("A less than truthful soft pedaling or whitewashing of the extent of defendant's participation in stating the facts to the court would have been inappropriate.").

Notwithstanding its duty to the court, however, the State is free to negotiate away any right it may otherwise have as part of a plea agreement. See *United States v. Block*, 660 F.2d 1086, 1091-92 (5th Cir. 1981) ("As part of a plea agreement, the State is free to negotiate away any right it may have to recommend a sentence."). And several jurisdictions recognize that a prosecutor's failure to remain silent in violation of a plea agreement is a material breach. See, *e.g.*, *Sidzyik*, 281 Neb. at 311-14; *State v. Manke*, 230 Wis. 2d 421, 424-25, 602 N.W.2d 139 (Wis. App. 1999) (prosecutor materially breached plea agreement promise to remain silent by stating, " 'I think [Manke is] a time bomb ready to explode, incarceration is the only way we can protect this community. . . . I would ask that the Court incarcerate [Manke].' ").

Yet, a promise to remain silent at sentencing has limits. It does not require a prosecutor to stand silent in the face of factual misstatements or to withhold relevant information from the court. See *Sullivan*, 115 Nev. at 388 n.4 ("[E]ven where the [S]tate has agreed to stand silent or make no recommendation, it may nonetheless correct factual misstatements and provide the court with *relevant information that is not in the court's possession*." [Emphasis added.]). If, for example, a defendant presents witnesses at a sentencing hearing, the State's promise to remain silent is not breached when it cross-examines the witness "to correct misimpressions created by [his or her] testimony." *Sanders v. State*, Nos. 04-99-00262-CR, 04-99-00263-CR, 2000 WL 84417, at *1 (Tex. App. 2000) (unpublished opinion) (citing *Heiligmann*, 980 S.W.2d at 715) (State did not breach promise to remain silent at sentencing by calling two rebuttal witnesses to attest to truthfulness of statements in PSI report after defendant testified report was untrue). Absent factual misstatements, a prosecutor who has agreed to remain silent at sentencing is not free to emphasize information already in the court's possession. See *Colvin*, 324 F.3d at 591 (Heaney, J., dissenting) (quoting *United States v. Mondragon*, 228 F.3d

978, 980 [9th Cir. 2000]) ("'Because the prosecutor's comments did not provide the district judge with any new information or correct any factual inaccuracies, the comments could have been made for only one purpose: to influence the district court to impose a harsher sentence than that suggested by appellant's counsel.'").

At least one jurisdiction has held that a prosecutor who has agreed to remain silent at sentencing also may alert the court to a defendant's conduct occurring between the presentence investigation and the sentencing hearing. See *Jackson*, 902 P.2d at 1294 (State did not breach plea agreement promise to stand silent by relating information about "near altercation" involving defendant between completion of PSI report and sentencing; prosecutor under duty to ensure court has complete and accurate information concerning defendant).

In a *Woodward* situation, the prosecutor is not required to ignore defense attempts to minimize culpability. See 288 Kan. at 302. But, when the State has contracted away the right to speak at sentencing, it no longer has free rein to argue against such efforts. If the defendant's minimization or other tactics rise to the level of misimpressions, through witness testimony or otherwise, the prosecutor has a duty to the court to correct such misimpressions. But that duty is limited in scope and cannot simply supply an end-run around the prosecutor's plea agreement promise to remain silent. See *United States v. Moncivais*, 492 F.3d 652, 662 (6th Cir. 2007) ("'The *Santobello* rule "proscribes not only explicit repudiation of the government's assurances, but must in the interests of fairness be read to forbid end-runs around them."'"); *cf. State v. Ross*, 166 Ariz. 579, 582-83, 804 P.2d 112 (Ariz. App. 1990) (State agreed to make no sentencing recommendation; prosecutor's "rigorous[]" cross-examination of defense witnesses, challenge to defense assertion that defendant wavered before commission of crime "breached the 'spirit of the inducement'" to plead).

Here, the prosecutor's questions to Barnett about his knowledge of the facts of this case and Peterson's prior conviction were appropriate in order to correct misimpressions created by Barnett's testimony and to ensure that the court had complete and accurate information concerning the defendant. See *Block*, 660 F.2d at

1090-92. Barnett testified that he formed his professional opinion based on the factual information provided by Peterson. This information was certainly incomplete and, in some ways, inaccurate. The total picture, although already largely known to the district court, was not painted through cross-examination simply to influence the court to impose a harsher sentence. See *Mondragon*, 228 F.3d at 980. There was a legitimate alternate purpose, which was consistent with the prosecutor's duty to the court, to provide Barnett with additional information so that he could fairly reevaluate his professional opinion.

That being said, the prosecutor trod very close to what our fellow judges in Wisconsin recognized as a "fine line" during her cross-examination of Barnett, veering dangerously toward general impeachment of the expert's testimony. See *Williams*, 249 Wis. 2d at 518-19. We caution future prosecutors, subject to State agreements to stand silent at sentencing, to avoid inserting disguised argument through cross-examination of a witness.

On the other hand, we are unpersuaded by Peterson's argument that Barnett's testimony did not contain any factual misstatements. Peterson asserts that "disagreements about what the facts were do not amount to misstatements of fact." We have more than mere disagreements about the facts here. At the preliminary hearing, there was no disagreement about the number of photographs found, the fact that Peterson viewed child pornography on his work computer, or the search terms he employed to reach the photographs. Nor was there any disagreement about Peterson's prior convictions on two counts of aggravated sexual battery. "[A] deliberate omission is often equal to an actual misstatement," *State v. Lockett*, 232 Kan 317, 319, 654 P.2d 433 (1982), and Peterson's omission of relevant facts to Barnett constituted factual misstatements by proxy.

We therefore hold that the prosecutor's questions challenging the factual basis for Barnett's opinion were appropriate and did not violate the plea agreement.

Had the prosecutor been content with cross-examination, Peterson would leave this court empty-handed. But she was not. She polished off her closing comments to the court by saying Peterson's

dishonesty to Barnett "should be considered by the court that he cannot or will not address his looking at child pornography or desire to look at child pornography." This went too far. The comment was aimed directly to Peterson's likelihood of recidivism, the main issue before a sentencing judge considering a dispositional departure to probation, and it violated the State's plea agreement promise to stand silent. *Cf. Johnson*, 258 Kan. at 107 ("editorializing" on facts may be improper when State agrees to take no position on portion of sentence); *United States v. Villa-Vazquez*, 536 F.3d 1189, 1197-98 (10th Cir. 2008) (government not excused from obligations under plea agreement even though court requested its view on sentencing; "The government should have explained to the court that it had made promises in the plea agreement and then limited itself to what was permitted by Paragraph 10 of the plea agreement— namely, a 'legally neutral' and 'non-argumentative' presentation of facts.").

Citing Court of Appeals' precedent, the State's brief may intimate that the standard for constitutional harmless error may apply when the State has breached a plea agreement. But the State fails to pursue such an argument. As the party benefitting from violation of Peterson's constitutional right to due process, it has failed to "prove[] beyond a reasonable doubt that the error complained of . . . did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed" to the sentence. See *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012); see also *Urista*, 296 Kan. 576, Syl. ¶ 6 (breach of plea agreement harmless error only if court can say beyond reasonable doubt State's promise had little, if any, influence on defendant's decision to enter into plea agreement).

Resentencing before a different judge is the typical remedy for the State's breach of a plea agreement. See *United States v. VanDam*, 493 F.3d 1194, 1206 (10th Cir. 2007); *Foster*, 39 Kan. App. 2d at 390. When a defendant does not seek to withdraw his guilty plea, "the less drastic remedy of resentencing appears to be most apt." *VanDam*, 493 F.3d at 1206.

Peterson seeks specific performance of the plea agreement at a resentencing hearing. Having concluded that the State breached the plea agreement, we vacate Peterson's sentence and remand for resentencing in front of a different judge, where the State will have the opportunity fulfill its obligations under the plea agreement.

## CONCLUSION

For all of the reasons detailed above, we reverse the judgments of the Court of Appeals and the district court, vacate Peterson's sentence, and remand this case to the district court for further proceedings consistent with this opinion.

MORITZ, J., not participating.

ERNEST L. JOHNSON, District Judge, assigned.