NOT DESIGNATED FOR PUBLICATION

No. 128,238

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DANNY EDWARD GROSHONG,
*Appellant*.

MEMORANDUM OPINION

Appeal from Atchison District Court; JOHN W. FRESH, judge. Submitted without oral argument. Opinion filed March 20, 2026. Sentence vacated and case remanded with directions.

*Kasper Schirer*, of Kansas Appellate Defender Office, for appellant.

*Sherri L. Becker*, county attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before WARNER, C.J., MALONE and HILL, JJ.

MALONE, J.:  Danny Edward Groshong agreed to plead no contest to one count of possession of methamphetamine in exchange for the State dismissing other charges and agreeing not to oppose his request for a dispositional departure to probation. But at sentencing, which was delayed several months because Groshong had failed to appear for the first scheduled sentencing hearing, the State argued Groshong should be denied probation and sentenced to imprisonment. On appeal, Groshong claims the State breached the plea agreement by arguing against the departure motion rather than standing silent. Under the facts presented here, we agree with Groshong's claim. Thus, we vacate Groshong's sentence and remand for a new sentencing hearing.

1

FACTUAL AND PROCEDURAL BACKGROUND

The State initially charged Groshong with possession of methamphetamine, possession of marijuana, possession of drug paraphernalia, and three driving-related offenses. After spending eight months in jail, Groshong entered a plea deal with the State. The plea agreement was not reduced to writing. But at the plea hearing on October 30, 2023, Groshong's counsel stated that in exchange for Groshong pleading no contest to one count of possession of methamphetamine, the State agreed to dismiss the remaining charges and "stand silent" on Groshong's motion for dispositional departure to probation provided that Groshong "presents a suitable treatment plan at the time of sentencing." The State and Groshong confirmed this understanding of the plea agreement.

The district court accepted Groshong's no contest plea and agreed to grant Groshong's request for a furlough so he could attend in-patient drug treatment at the Mirror Topeka Residential Facility. The furlough order stated that Groshong was to report back to jail upon his discharge from treatment.

On December 6, 2023, the district court granted Groshong's request for a personal recognizance bond so that upon completion of his inpatient treatment program, he could be transferred to a "sober living program" at the Oxford House, including any outpatient treatment. Groshong finished his inpatient treatment but was unable to secure a bed at the Oxford House. According to Groshong, he contacted the Atchison County Jail to report back to custody but was threatened by a corrections officer if he returned to jail. Groshong did not return to the jail because he "didn't feel like it was safe." After failing to report back to jail, Groshong did not appear for his scheduled sentencing on January 19, 2024. The district court ordered a bench warrant for Groshong's arrest.

Groshong was arrested on the bench warrant and placed back in jail on June 25, 2024—he had been living in Atchison and working at a local construction company. The

district court tried to hold a sentencing hearing via Zoom on June 28, 2024, but Groshong did not appear for the Zoom hearing. The sentencing hearing was continued and ultimately held in the courtroom on September 11, 2024.

Following his arrest Groshong moved for a dispositional departure to probation. The motion alleged (1) that Groshong was amenable to treatment and rehabilitation and was willing to participate in outpatient drug treatment services; (2) that he had been threatened by a corrections officer from the Atchison County Jail and did not feel safe returning to that facility; (3) that he was amenable to probation; and (4) that he had accepted responsibility for his actions.

At the sentencing hearing on September 11, 2024, Groshong reiterated his arguments for a dispositional departure. He called Atchison County Corrections Officer Elizabeth Easterday to corroborate his allegation about the threat by a corrections officer. Easterday testified that in January 2024 she overheard a phone call in which Corrections Officer Tim Barnhart threatened to meet with Groshong and "was going to beat his ass." She testified the threat sounded serious to her. Barnhart had transferred to another facility by the time of the sentencing hearing. Upon learning that Barnhart was unavailable to testify, the State objected to Easterday's testimony as hearsay. The district court sustained the objection and struck the testimony. But the judge added that for the purpose of the hearing it accepted Groshong's assertion about the threat "at face value" and stated, "I will accept that [Groshong] was threatened." Later, in denying Groshong's request for probation, the judge stated, "I do believe there were issues with the jail. I do believe there were issues with people from the jail, and that's troubling on its own."

The State opposed Groshong's departure motion, noting it had "originally agreed to stand silent; however, that's always contingent upon defendants appearing for court, remaining law abiding, abiding conditions of bond." The prosecutor stated that "the State believes it is free to argue any sentence that it deems appropriate due to the defendant not

appearing for sentencing." The State did not ask the district court to rule whether it was released from the plea agreement, and the court made no findings on the matter. The State argued extensively that Groshong had failed to show substantial and compelling reasons to depart and asked the district court to impose 34 months' imprisonment.

The district judge denied Groshong's departure motion stating, "I just don't find compelling reasons." The district court sentenced Groshong to 32 months' imprisonment with 12 months' postrelease supervision. Groshong timely appealed his sentence.

ANALYSIS

Groshong claims he must be resentenced because the State materially breached its plea agreement when it opposed his motion for a dispositional departure to probation rather than standing silent. The State first argues the issue is unpreserved and should not be addressed for the first time on appeal. On the merits, the State contends it was released from the plea agreement because Groshong initially did not appear for sentencing and also because he failed to present a suitable drug treatment plan at sentencing.

Generally, issues must be raised in the district court to be preserved for appeal. The State argues that at no point in the sentencing hearing did Groshong argue that the State was failing to abide by the terms of the plea agreement, and that it is "customary" for defense counsel to interrupt when the State's sentencing recommendations are not in line with negotiations. Groshong asserts this court should address this issue for the first time on appeal under the well-recognized exceptions when (1) consideration of the claim is necessary to prevent the denial of fundamental rights, or (2) the claim involves only a question of law arising on proved or admitted facts and is determinative of the case. See *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015).

This court has consistently held that a claim involving the State's alleged breach of a plea agreement implicates due process and may be addressed for the first time on appeal without an objection in district court to prevent the denial of fundamental rights. See, e.g., *State v. Bell*, 65 Kan. App. 2d 160, 170-71, 561 P.3d 562 (2024); *State v. Meyer*, 51 Kan. App. 2d 1066, 1070, 360 P.3d 467 (2015). Consistent with these prior rulings, we will address Groshong's claim for the first time on appeal.

Turning to the merits, the State has a duty to fulfill the obligations made under a plea agreement. "'[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.'" *State v. Urista*, 296 Kan. 576, 583, 293 P.3d 738 (2013); see *Santobello v. New York*, 404 U.S. 257, 262, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971). If the State fails to uphold a promise that was made in a plea agreement, the defendant is denied due process—even if the record shows that the district court's decision was not influenced by the State's actions. *Urista*, 296 Kan. at 583. Whether the State breached a plea agreement presents a question of law over which appellate courts have unlimited review. *State v. Jones*, 302 Kan. 111, 116, 351 P.3d 1228 (2015).

Because a plea agreement is a contract between the parties, "'application of fundamental contract principles is generally the best means to fair enforcement of a plea agreement, as long as courts remain mindful that the constitutional implications of the plea bargaining process may require a different analysis in some circumstances.'" *State v. Peterson*, 296 Kan. 563, 567, 293 P.3d 730 (2013). To that end, any ambiguity in a plea agreement should be strictly construed against the State because the State controls the plea agreement process. *State v. Case*, 289 Kan. 457, 462, 213 P.3d 429 (2009).

Here, the plea agreement between the parties was not reduced to writing. At the plea hearing, Groshong's counsel explained the deal as follows:

5

"Judge, the plea agreement is such that Mr. Groshong will enter a plea of no contest or guilty to Count One of the State's complaint. That charges him with possession of methamphetamine, a drug severity Level 5 felony. In exchange for that plea, the State has agreed to dismiss all remaining counts.

"At sentencing it's anticipated that Mr. Groshong will be in a Box 5B, presumptive prison. However, the State has agreed to stand silent with regard to Mr. Groshong's forthcoming motion for downward dispositional departure provided that Mr. Groshong presents a suitable treatment plan at the time of sentencing."

On appeal, the State maintains that it was not required to honor its obligation to stand silent on the departure motion because (1) Groshong failed to comply with the one stated condition of the agreement—to present a suitable treatment plan at sentencing, and (2) there was a "material change in circumstances" when Groshong violated the bond conditions and initially failed to appear for sentencing. We will address each reason the State offers to explain why it was not bound by the terms of the plea agreement.

*Did Groshong present a suitable treatment plan at sentencing?*

The only explicit condition of the plea agreement upon which the State's silence at sentencing was based was that Groshong would present "a suitable treatment plan at the time of sentencing." The State asserts that the only semblance of a treatment plan that Groshong mentioned in his departure motion was that he would seek additional outpatient services if the district court granted his request for probation. The State maintains that Groshong's willingness to participate in outpatient treatment was not a suitable plan.

We observe that whether Groshong presented a "suitable" treatment plan at sentencing to address his drug addiction is inherently a subjective condition. Groshong completed an inpatient treatment program after the plea hearing and offered to complete additional outpatient drug treatment services if granted probation. Arguably, Groshong

6

presented a treatment plan to the district court as a condition of his request for probation. Whether the treatment plan was suitable is subject to reasonable debate.

The State did not ask the district court to rule whether Groshong's departure motion qualified as a "suitable" treatment plan, and the district court made no express findings on the matter. But in denying Groshong's departure motion, the judge commented that "[Groshong] did go to inpatient treatment. He successfully completed that. He's not done the follow-through. He tells me today that he is not a drug addict, he has not failed any tests. I guess that means treatment worked." So apparently the district court believed that Groshong had made some progress toward resolving his drug addiction problems since the date of his plea hearing.

Kansas law is clear that any ambiguity in a plea agreement should be strictly construed in favor of the defendant and against the State. *Case*, 289 Kan. at 462. Construing the terms of the plea agreement in favor of Groshong and against the State, we are unwilling to find that Groshong failed to present a suitable treatment plan at sentencing, and thus, we are unwilling to find that the State was released from its obligations under the plea agreement for this reason.

*Was there a material change in circumstances releasing the State from its agreement?*

The State also argues that it was released from its obligation to stand silent on the departure motion because there was a "material change in circumstances" when Groshong violated the conditions of his bond and initially failed to appear for sentencing. But as Groshong points out, his failure to initially appear for sentencing did not violate any express terms of the plea agreement. Groshong asserts the State could have indicated at the plea hearing that it would be released from the agreement if Groshong violated his bond or failed to appear for sentencing, as these are typical terms of many agreements, but the State failed to include these terms as part of its plea agreement with Groshong.

7

Groshong also claims the State caused the material change in circumstances on which it relies to be released from the plea agreement because he violated his bond conditions and failed to return to jail only because of the threat from the corrections officer.

The State cites *State v. Marshall*, 21 Kan. App. 2d 332, 337, 899 P.2d 1068 (1995), for the proposition that a defendant's post-plea behavior can violate an implied condition of a plea agreement thereby releasing the State from its obligations under the agreement. In *Marshall*, the State agreed to recommend that Marshall's sentence run concurrent on all counts and concurrent with his sentences in other cases. The district court suspended imposition of sentence and placed Marshall on probation for three years. When Marshall later violated his probation, the State disregarded the initial plea agreement and argued for consecutive sentencing. On appeal, this court agreed with the State's argument that "Marshall's post-plea behavior excused [the State] from following the plea agreement." 21 Kan. App. 2d at 337; see also *State v. Richmond*, 21 Kan. App. 2d 126, 132, 896 P.2d 1112 (1995) (concluding the State was not bound by the terms of the plea agreement after the defendant violated the terms of his suspended sentence, broke the law by possessing cocaine, and failed to pay his fines as stated in the plea agreement). But see *Bell*, 65 Kan. App. 2d at 171-73 (finding defendant's positive UAs were not a material change in circumstances releasing State from plea agreement).

*Marshall* and *Richmond* are older cases when Kansas courts imposed suspended sentences and are not binding as precedent in Groshong's case. This is not a situation where Groshong's probation was revoked following the imposition of a suspended sentence. What the State is really arguing is that a defendant's failure to appear at sentencing is an implied condition of any plea agreement such that Groshong's failure to appear, standing alone, released the State from its plea agreement, even when it was not an express condition of the agreement. The State asserts in its brief that "[i]mplied in this [plea] contract is the obligation that the defendant remain law abiding (as ordered as a condition of bond) and that the defendant return for sentencing (also ordered as a bond

condition)." The State asserts that when Groshong failed to appear for sentencing, "he changed the circumstances, and fundamental fairness should release the State from its obligation." Notably, the State cites no legal authority to support these claims.

We frame the issue before this court as follows: Does the defendant's unexcused failure to appear for sentencing, standing alone, release the State from its plea agreement, when that is not an express condition of the agreement? Neither party has cited a Kansas case directly on point that answers this question, and our research has found none. But by advocating for an affirmative answer to this question, the State is asking our court to create new law in Kansas. We decline the State's invitation to do so.

Although we can find no case directly on point, we consider *State v. Boley*, 279 Kan. 989, 997, 113 P.3d 248 (2005). There, the Kansas Supreme Court examined whether the State was permitted to withdraw from a plea agreement under the frustration of purpose doctrine. As part of a plea agreement, Boley pled no contest to one count of attempt to manufacture methamphetamine, a severity level 1 drug felony. The State agreed to dismiss a conspiracy charge and to recommend a downward durational departure sentence of 48 months' imprisonment. While Boley's appeal was pending before the Court of Appeals, the Kansas Supreme Court decided *State v. McAdam*, 277 Kan. 136, 146-47, 83 P.3d 161 (2004) (holding defendant convicted of manufacturing methamphetamine must be sentenced to a severity level 3 drug felony rather than a severity level 1 drug felony). Accordingly, the Court of Appeals remanded Boley's case for resentencing and ruled that because resentencing would frustrate the State's purpose in entering the plea agreement, the State could withdraw from the plea agreement and refile the original charges, if it chose to do so. *Boley*, 279 Kan. at 990-91.

The Kansas Supreme Court granted a petition for review and reversed the portion of the Court of Appeals ruling that the State could withdraw from its plea agreement. 279 Kan. at 1003. The Kansas Supreme Court explained that the State could not rely on the

frustration of purpose doctrine because "the frustration was not 'so severe' that it is fairly regarded as within the risks assumed under the contract." 279 Kan. at 997. This reasoning was based, in part, on the fact that the plea agreement did not have any express terms about the circumstances for which the State sought to withdraw from the agreement:

> "The prosecutor could have protected against this risk by including a provision in the plea agreement requiring the defendant to waive his right to appeal or indicating that if the defendant successfully challenged his sentence, such action would be considered a breach of the agreement. In fact, the plea agreement did provide for other circumstances where the State would be released from its obligations under the agreement and allowed to reinstate charges, i.e., if the defendant failed to comply with all bond conditions, failed to appear for all court appearances, or violated federal, state or local laws pending disposition of the case." 279 Kan. at 997.

*Boley* is factually distinguishable from Groshong's case. But the Supreme Court in *Boley* emphasizes the point that if the State wants to be released from a plea agreement, it must express all reasonably foreseeable circumstances in the agreement that will allow for the State's release. We also consider our court's recent decision in *Bell*. There the State argued it was released from a plea agreement because of a material change in circumstances when Bell violated the conditions of his bond by twice testing positive for methamphetamine. The State argued that "the premise of the plea agreement was for Bell to receive effective drug treatment and continued sobriety" and that "Bell's failure negated the purpose for recommending non-prison sanctions." 65 Kan. App. 2d at 172.

This court observed that the plea agreement was "silent as to any rationale which might support a party's deviation from its terms." 65 Kan. App. 2d at 172. In rejecting the State's claim, this court reasoned that if the State wanted to be released from the agreement because Bell violated bond conditions, it could have said so in the plea agreement or at least asked the district court to rule on the matter:

> "The State tries to convince us that the two positive drug tests were a material change in circumstances which validate its deviation from the plea agreement. But it did not ask the district court to make such findings. Because we have no such findings to review, we will not make such findings for the first time on appeal." 65 Kan. App. 2d at 174.

The "application of fundamental contract principles is generally the best means to fair enforcement of a plea agreement." *Peterson*, 296 Kan. at 567. A fundamental contract principle is that a court should enforce a contract as written and may not rewrite a contract for the parties under the guise of construing their agreement. *Arnold v. Foremost Insurance Co.*, 52 Kan. App. 2d 833, 840-41, 379 P.3d 391 (2016). There are many consequences for a defendant's unexcused failure to appear for sentencing. The defendant can expect to have their bond revoked and a bench warrant issued for their arrest. Groshong paid this price and was held in jail after being arrested on the bench warrant from June 25, 2024, until his sentencing hearing on September 11, 2024. The defendant can even be charged with a separate crime. See K.S.A. 21-5915. But Groshong's failure to initially appear for sentencing did not violate any express terms of the plea agreement between the parties. The State offers no controlling legal authority to support its claim that Groshong's failure to appear at sentencing automatically releases the State from its plea agreement as a matter of law.

The State controls the plea agreement process. *Case*, 289 Kan. at 462. Here, the State was lackadaisical in its approach to its plea agreement with Groshong. It did not reduce the agreement to writing. It could have indicated at the plea hearing that it would be released from the agreement if Groshong did not appear for sentencing, but it failed to do so. At the sentencing hearing on September 11, 2024, the State argued against Groshong's departure motion contrary to the plea agreement without first seeking a ruling from the district court that the State was released from the agreement. Now the State wants this court to rewrite its agreement with Groshong or to create and enforce some "implied conditions" of the agreement without any sound basis in Kansas law.

11

We conclude the State breached the plea agreement it made with Groshong by arguing against the departure motion rather than standing silent. We acknowledge the State's breach of a plea agreement can be harmless error "if a court can say beyond a reasonable doubt that the State's promise had little, if any, influence on the defendant's decision to enter into the plea agreement." *Urista*, 296 Kan. at 594-95. Here, the State has not argued that its breach of the plea agreement constituted harmless error.

If the State fails to uphold a plea agreement, the defendant is denied due process even if the district court's decision was not influenced by the State's actions. *Urista*, 296 Kan. at 583. The appropriate remedy for the State's breach of a plea agreement is specific performance: "to vacate the sentence and remand for a new sentencing hearing before a different district court judge with directions that the State comply with the provisions of plea agreement at sentencing." 296 Kan. at 595. Our decision to direct a new sentencing hearing before a different judge is for the appearance of judicial neutrality and does not reflect on the judge who originally sentenced Groshong. See 296 Kan. at 595.

Finally, we address Groshong's argument that the State caused the material change in circumstances on which it relies to be released from the plea agreement. Groshong offered evidence at the sentencing hearing to explain or at least to mitigate his failure to report to jail after treatment and appear for sentencing. The district court accepted as true that Groshong had been threatened by the corrections officer and expressed concern about it. At the very least, the State should have asked the district court to rule whether it was released from the plea agreement before assuming it could argue against the departure motion. The district court made no findings on the matter. Even if we did not conclude the State breached the express terms of the plea agreement, we would remand this case for a new sentencing hearing with directions for the district court to resolve the factual dispute about whether Groshong's failure to appear for sentencing was unexcused.

Sentence vacated and case remanded with directions.

12

*  *  *

WARNER, C.J., concurring in part and dissenting in part: It is fairly rare in a criminal case for courts' holdings to turn on contract principles such as *material breach* and terms that have been *implied by law*. Because this case involves an allegation that the State breached the parties' plea agreement—a contract—these principles come to the fore. See *State v. Peterson*, 296 Kan. 563, 567, 293 P.3d 730 (2013). In applying these principles to the facts of this case, I conclude that the State was excused from its promise to stand silent while Danny Groshong requested a dispositional departure at sentencing. Thus, I would affirm the judgment, and I dissent from the portion of the majority opinion that reaches a contrary conclusion.

To better understand the reasons why I disagree with my colleagues' holding, it is helpful to begin with our points of agreement. The majority opinion aptly sets forth many legal principles—both for contracts generally and for plea agreements in particular—that guide our discussion. And I join fully in my colleagues' conclusion that the State has not shown that Groshong failed to provide a suitable treatment plan at sentencing (and thus failed to comply with the plea agreement). The suitability of a treatment plan is a matter left to the district court's sound judgment, based on the facts presented. Yet no one at Groshong's sentencing hearing contested the adequacy of his plan or articulated a belief the plan was unsuitable. Appellate courts routinely decline the invitation to make such findings for the first time on appeal. I thus agree with my colleagues that the State has not shown that Groshong breached his obligations under the plea agreement in this way.

The parties' silence at sentencing regarding the suitability of Groshong's treatment plan is explained in part by the facts giving rise to the second issue in this case—and this is where my colleagues and I diverge. Groshong's plea hearing took place in late October 2023. The district court originally scheduled Groshong's sentencing hearing in December 2023 but continued that hearing so Groshong could seek treatment. His sentencing

13

hearing was rescheduled for January 19, 2024. Groshong did not appear at the January sentencing hearing. He did not ask for a continuance and apparently did not contact his attorney. Nor did he contact the court after the scheduled sentencing hearing, indicating that he placed the wrong date on his calendar. Instead, he was arrested on a bench warrant about five months later. The court rescheduled a sentencing hearing in June 2024, but Groshong again declined to attend. Groshong's sentencing hearing finally took place in September 2024—almost a full year after Groshong entered his plea.

The district court had some questions for Groshong during the September 2024 sentencing hearing as to whether he had been seeking treatment during the 11 months that had passed since the plea hearing. But the court's and the parties' focus centered on the fact that Groshong had not attended his sentencing hearing in January and only became available for sentencing when he was arrested in June. As the majority notes, the prosecutor at the September sentencing hearing acknowledged that the parties' oral plea agreement included an agreement that the State would "stand silent" at sentencing when Groshong requested a dispositional departure to probation. But the prosecutor explained that this term was contingent on Groshong "abid[ing] by conditions of bond and appear[ing] at sentencing, and he failed to do that." Groshong did not object to the State's change of course at sentencing and instead challenges the State's action for the first time on appeal.

The majority opinion reviews these facts and concludes that the parties' plea agreement did not include a requirement that Groshong appear at sentencing. I disagree.

The majority opinion makes much of the fact that the State controls the plea process and ambiguous plea agreements are construed against the State. But the issue here is not whether the plea agreement contained an ambiguous term that must be construed. Instead, the issue is whether the plea agreement included the requirement that

14

Groshong attend his sentencing hearing as a term *at all*. My review of the record and Kansas law leads me to the conclusion that this term was implied by law.

It is not unusual for courts interpreting contracts to superimpose legal requirements onto parties' agreements. This practice is rooted in the assumption that parties should not enter into agreements that are contrary to the law. For this reason, despite what the other terms of a contract may be, courts have found that a person cannot sell a product that is not legally merchantable or fit for its particular purpose. See, e.g., *Golden v. Den-Mat Corporation*, 47 Kan. App. 2d 450, 495, 276 P.3d 773 (2012) (discussing these implied warranties). Courts have also found that contractors who have agreed to do work on a home must be licensed to do that work, regardless of whether the licensing requirement was included in the contractor's agreement with the homeowner. See, e.g., *Drew v. Cobblestone Builders, Inc.*, No. 105,673, 2012 WL 3289948 (Kan. App. 2012) (unpublished opinion) (discussing a situation arising from the absence of a contractor's license). Residential lease agreements are read to incorporate the requirements of the Residential Landlord Tenant Act, regardless of their written text. See *Washburn South Apartments v. Hession*, 65 Kan. App. 2d 626, 633, 570 P.3d 1268 (2025).

Similar to these examples in the civil context, Kansas law imposes onto all plea agreements the requirement that a defendant must appear at their sentencing hearing. See K.S.A. 22-3405(a) (requiring a defendant to be present "at the imposition of sentence"). It is true, as my colleagues point out, that the attendance requirement in K.S.A. 22-3405(a) exists for all defendants in criminal cases—regardless of whether the defendant enters into a plea agreement. But this overarching requirement merely reiterates that attendance at sentencing is a term implied by law for all pleas. A contrary holding would leave open the possibility that the State could contractually excuse a defendant from sentencing, which is inconsistent with Kansas law. And it could allow the purpose of the plea to be

15

negated—a defendant could simply avoid sentencing and thus never suffer any consequence for the conviction resulting from the plea.

My review of the record reveals that the parties understood this requirement here. At the plea hearing, Groshong's attorney explained that the parties had agreed that the state would "stand silent . . . at the time of sentencing" when Groshong requested a dispositional departure. In other words, the parties recognized that there would be a sentencing hearing where the parties would be present. When Groshong failed to attend the scheduled sentencing hearing, he made it impossible for the State to hold up its end of the bargain.

It is also telling that when Groshong was arrested on a warrant months later, and a sentencing hearing was held, he did not object when the State indicated it believed it was no longer bound to stand silent in light of his absence from the previous sentencing hearing. In other words, Groshong was not surprised that the State believed that he had violated the parties' agreement when he did not attend the January sentencing hearing.

The question then is whether this breach by *Groshong* was a material one. As the majority points out, not all breaches by a defendant excuse the State from its contractual obligations in the plea context. Instead, courts look to whether the breach resulted in a material change of circumstances that altered the parties' expectations. I have no difficulty concluding that it did here.

This is not an instance, as in *State v. Bell*, 65 Kan. App. 2d 160, 170-71, 561 P.3d 562 (2024), where a person veered from the plea agreement in some limited way that did not materially affect the parties' positions. Nor are we faced with an instance where Groshong missed his sentencing hearing but contacted the court soon thereafter to correct the mistake. Indeed, despite knowing that he had a duty to appear for sentencing, Groshong continued to work and live in the community—only showing up to court after

16

he was arrested on a warrant months later. The majority holds that even though Groshong demonstrated an unwillingness to comply with the legal and contractual requirements that he attend sentencing, the State cannot rely on these altered circumstances to argue a dispositional departure to probation is inappropriate. Again, I disagree.

Kansas courts have recognized that material changes in circumstances can allow a State to depart from its previous position in a plea agreement. See *State v. Marshall*, 21 Kan. App. 2d 332, 337, 899 P.2d 1068 (State not bound by sentencing recommendation in plea agreement when defendant violates the terms of his probation), *rev. denied* 258 Kan. 861 (1995); *State v. Richmond*, 21 Kan. App. 2d 126, 132, 896 P.2d 1112 (1995) (State not bound by sentencing recommendation in plea agreement when defendant later breaks the law). My colleagues seek to minimize the reasoning of these courts, pointing out that the decisions arose at a time when Kansas courts imposed suspended sentences. But the rationale of these decisions—that a defendant's actions may materially alter the landscape of a case and thus release the State from a sentencing recommendation in a plea agreement—remains legally and logically sound.

There are many aspects of this case that the State and Groshong in hindsight likely both wish were handled differently. The unfortunate incident at the jail following the plea hearing, for example, undoubtedly resulted in some confusion as to what the proper course of action should be for Groshong between the plea and sentencing hearings. And as the majority opinion observes, this case would likely not be before us if the parties' plea agreement had been reduced to writing and included standard requirements that a defendant abide by the conditions of their bail and appear at their sentencing hearing. But the absence of an express agreement does not mean that the parties were not required to hold up their respective sides of the bargain.

I would find that Groshong's failure to appear at the January 2024 sentencing hearing breached the parties' plea agreement and excused the State from its agreement to stand silent when Groshong requested probation. I therefore respectfully dissent.